DRUDGE *v.* LEITER ET AL.

[No. 2,347.    Filed January 5, 1898.]

COMPLAINT.—*Sufficiency of, in Action for Debt.*—A complaint which avers that plaintiff delivered to defendant a certain quantity of wheat of a stated market value is not sufficient in an action for debt.   *p. 696.*

BAILMENT.—*When Contract Amounts to.*—A receipt drawn by a warehouseman for a certain quantity of wheat "received in store, subject to our charges. Fire at owner's risk," constitutes a contract of bailment.   *pp. 696, 697.*

WAREHOUSEMAN.—*Conversion.*—*Action for Recovery of Property Converted.*—Where a warehouseman sold wheat on deposit and appropriated the money to his own use, an action against such warehouseman, waiving the conversion and seeking a recovery upon an implied contract, must be for the price received for the wheat, and not for the value of the converted wheat.   *p. 697.*

SAME.—*Bailment.*—*Property Accidentally Destroyed.*—When property in the custody of a bailee is destroyed accidentally, without any fault on his part, the bailee is not liable.   *p. 699.*

SAME.—*Warehouse Receipts.*—*Construction.*—*Commercial Usage.*—A receipt given by a warehouseman for wheat received may be construed by adopting the meaning of its own terms as explained by commercial usage.   *pp. 700-702.*

Drudge *v.* Leiter *et al.*

SAME—*Grain Deposited in Common Receptacle.—Destruction by Fire.*
*—Liability of Warehouseman.*—Owners of wheat deposited with a
warehouseman engaged in receiving grain in store and mingling
same in a common receptacle and selling and shipping the grain so
stored, are owners as tenants in common of the entire quantity of
the grain so commingled, and a depositor of grain who has so de-
posited a certain quantity is the owner of an undivided portion of
the common amount, not only while his grain is actually present in
the common store, but his title as tenant in common will continue
so long as any grain so deposited by any of the depositors remains
in store, unless withdrawn or transferred by him. If at any time
the whole mass is less than the aggregate deposits, then each de-
positor owns such proportion of the grain in store as his deposit
bears to the aggregate of all the deposits; and if the warehouse and
contents be destroyed by fire, without fault of the warehouseman,
at a time when there is not a sufficient amount of grain in the ware-
house to satisfy the demands of all depositors, by reason of sales
thereof made by the warehouseman, a depositor can recover for the
value of the grain deposited by him, less his proportionate share of
the aggregate amount on deposit at the time of the fire. *pp. 702–
704.*

From the Fulton Circuit Court. *Reversed.*

*W. L. Essick* and *Conner & Rowley*, for appellant.

*George W. Holman, Rome C. Stephenson, M. A.
Barker, J. H. Bibler,* for appellees.

BLACK, J.—The appellant's complaint against the
appellees contained four paragraphs. A demurrer to
the first paragraph for want of sufficient facts was
sustained.

In the first paragraph it was alleged, that on the
31st day of March, 1894, the appellees were partners,
doing business under the firm name of Leiter & Peter-
sen, owning and operating the Pottowattomie Flour-
ing Mills at Rochester, Indiana; that on said day the
appellant delivered to the appellees, at their said
mills, six hundred and ninety-nine and four-sixtieths
bushels of wheat, then of the market value of sixty
cents per bushel, and of the total value of $419.40;
"and that in this way, and for said wheat, the said

defendants became indebted to the plaintiff in said sum, which, though due, remains wholly unpaid; wherefore," etc.

We are informed by counsel for appellant that this paragraph is upon the theory of debt. We are unable to find it sufficient upon any theory. It does not show a breach of any contract, the violation of any duty relating to person or property, the infringement of any right, or any ground upon which the appellant is entitled to relief in law or equity. Admitting as true the averment of facts on which the alleged indebtedness is predicated, such a consequence does not legally follow. Such facts might well exist as stated without any indebtedness. See *Stanton* v. *Kenrick*, 135 Ind. 382.

Demurrers to the second and third paragraphs of answer to the second and third paragraphs of complaint, and demurrers to the second and third paragraphs of answer to the fourth paragraph of complaint were overruled.

In the second paragraph of complaint it was stated, in substance, that on the 31st day of March, 1894, and for a long time before and after that date, the appellees were partners, under the name and style of Leiter & Petersen, owning and operating the Pottowattomie Flouring Mills, at Rochester, and were also at the same time shipping and selling wheat and grain; that on said day the appellant delivered to the appellees at their said mills, 699 4-60 bushels of wheat, which the appellees then and there received; and they issued to the appellant a receipt therefor as follows: "No. 67. Mar. 31, 1894. Received of F. M. Drudge six hundred and ninety-nine 4-60 bushels of wheat in store, subject to our charges. Fire at owner's risk. Leiter & Petersen." It was alleged that afterward, but at what particular date the appellant could not state, the ap-

Drudge *v.* Leiter *et al.*

pelles sold said wheat and converted it to their own use, without the knowledge or consent of the appellant, and received therefor the sum of $440.00. It was further stated: "The plaintiff here expressly waives the tort in the sale and conversion aforesaid, and sues in debt for the said $440.00, which he says the defendants justly owe him; and he says the said sum is due, but remains wholly unpaid. Wherefore," etc.

In the third paragraph of complaint, after stating the delivery of the wheat and the issuing of said receipt, the appellant sought to recover upon an alleged contemporaneous oral agreement that he should receive money only for said wheat. A valid agreement to such effect would be, not a contract of bailment, but one of sale. *Lyon* v. *Lenon*, 106 Ind. 567.

The receipt was so drawn as to constitute a contract of bailment. See *Pribble* v. *Kent*, 10 Ind. 325; *Schindler* v. *Westover*, 99 Ind. 395.

The third paragraph of complaint proceeded upon the false theory that a recovery might be had upon a contemporaneous oral agreement which contradicted the written contract.

The fourth paragraph of complaint was insufficient upon the theory on which it proceeded, which was that of waiving the conversion and seeking a recovery upon an implied contract, the conversion shown being the sale of the wheat by the appellees and the appropriation of the money received for it to their own use. In such case, it is not the value of the converted wheat that may be recovered, but it is the price received for the property; and this was not stated in the fourth paragraph. See 26 Am. and Eng. Ency. of Law, 792 *et seq.;* 28 Am. and Eng. Ency. of Law, 569 *et seq.;* *Jones* v. *Gregg*, 17 Ind. 84, 87.

We need not consider the question as to the action of the court in overruling demurrers to answers, ex-

cept to inquire whether the second and third para-
graphs of answer to the second and third paragraphs
of complaint presented sufficient defenses to the sec-
ond paragraph of the complaint.    In both of these
paragraphs of answer the appellees admitted the ex-
ecution to the appellant of the receipt, and alleged
that on the 12th of February, 1895, their mill and
storehouse, with the contents thereof, was totally de-
stroyed by fire without any fault on their part, and
that no demand was made by the appellant.    It was
also in substance alleged in both paragraphs that at
the time of the execution of the receipt, and ever after,
until the fire, the appellees had on hand in said mill
and storehouse wheat of grade and quality like that
stored by the appellant, in sufficient quantity to com-
ply with any demand of the appellant for the return
of his said wheat.

The distinctive difference between the paragraphs
was, that while it was alleged in the second that on
the day of the fire the appellees had on hand wheat
in store in said mill and storehouse of like grade and
quantity [quality] sufficient to restore to all having
wheat stored therein the quantity they each so stored,
it was stated in the third paragraph that at the time
of the fire the appellees had on hand in the said mill
and storehouse wheat of like grade and quality as that
stored by the appellant sufficient to fully return to him
the amount called for by said storage receipt.

Construing the pleadings according to the effect
manifestly intended and given to them, the question
is presented as to whether or not in such a case it is a
sufficient defense to the entire cause of action to show
that the warehouseman at the time of the destruction
of his warehouse, with its contents, by fire, without
his fault, had there on hand as much grain as the
plaintiff had deposited, and of the same kind and

Drudge *v.* Leiter *et al.*

quality; or is it necessary to such full defense to show that he had on hand enough grain to supply to all his depositors the quantity stored by them?

When property in the custody of a bailee is destroyed accidentally, without any fault on his part, he is not liable. *Rice* v. *Nixon,* 97 Ind. 97.

By an act of March 25, 1879, Acts 1879 (Spec. Sess.), p. 231, sections 8720 *et seq.,* Burns' R. S. 1894 (6541 *et seq.,* R. S. 1881), it is provided (section 1) that "every person, firm, company or corporation, receiving * * * * wheat * * * * * in store, or undertaking to receive or take care of the same, with or without compensation or reward therefor, shall be deemed and held to be a warehouseman." In section 2, provision is made for the giving of a receipt by the warehouseman for the article so received, "which receipt shall be evidence in any action against said warehouseman." By section 7 it is provided, that no warehouseman or other person shall sell or incumber, ship, transfer, or in any manner remove beyond his immediate control any goods wares, merchandise, produce, commodity, property or chattel for which a receipt or voucher shall have been given, without the written consent of the person holding and producing such receipt. Section 9 provides for the punishment as for a crime of any warehouseman or person who shall willfully, knowingly, and purposely violate any of the provisions of the act, and also provides: "Every person aggrieved by the violation of any of the provisions of this act shall have and maintain an action against the person, company, or corporation violating the same, to recover all damages, immediate, consequent and legal, which he may have sustained by reason of such violation as aforesaid, whether such person may have been convicted criminally or not."

*Miller* v. *State,* 144 Ind. 401, was a criminal prose-

cution under sections 7 and 9 of said act of 1879.   It was contended on behalf of the defendant that, from the manner in which he did business, of which the prosecuting witness had knowledge, it must have been understood by both that the defendant might mix the wheat of the prosecuting witness with other wheat in the defendants' storehouse, and might sell the mixture in the course of business.   Speaking of this claim of counsel, the court said: "Undoubtedly the parties might have agreed that this should be done, but only by the written consent of the holder of the receipt or his surrender of the same.  No agreement of that kind is shown, and until he thus abandoned his rights under the statute the holder of the receipt is entitled to claim the wheat for which it calls."   It was held that an instruction was correct by which the court, in effect, informed the jury that if the defendant, without the written consent of the holder of the receipt, mixed his wheat with other wheat and sold the same, the defendant was guilty of a violation of the statute.   "That," said the court, "is but stating what the statute expressly declares."   In that case there was no wheat whatever left in the defendant's warehouse, or elevator, but he had disposed of it all, and thus had embezzled the wheat of the prosecuting witness, "the very evil," the court said, "against which the statute was directed."

In the absence of an agreement to the contrary, the usages of a particular business, it is held, may be presumed to have entered into and formed a part of the contracts and understandings of persons engaged in such business and those who deal with them.   *Morningstar* v. *Cunningham*, 110 Ind. 328.

Usage in a particular trade or business cannot control an express contract, but it is presumable, when a contract is ambiguous, that it was made with refer-

ence to a known usage or ordinary course of a particular business. In such case the known and ordinary course of the particular business may be proved, to raise a presumption that the transaction was in conformity therewith. *Lyon* v. *Lenon*, 106 Ind. 567.

*Rice* v. *Nixon, supra,* related to the loss by fire of wheat stored. Speaking of the principle applicable where a warehouseman receiving wheat to be stored for the owner commingles it with his own wheat, it was said by the court: "Articles of such a character can be separated by measurement, and no injury result to the owner from the act of the warehouseman in mingling them with like articles of his own." It was also said, that the great weight of authority is, that in such case the contract is one of bailment, and not of sale, the warehouseman and the depositor becoming owners as tenants in common. It is further said, that it cannot be presumed that warehousemen in receiving grain for storage, or depositors in entrusting it to them for that purpose, intended or expected that each lot, whether of many thousand bushels or of a few hundred, should be placed in separate receptacles; but that the presumption is that the warehouseman and the depositor intended that the grain should be placed in a common receptacle and treated as common property. See, also, *Morningstar* v. *Cunningham, supra;* *Schindler* v. *Westover*, 99 Ind. 395.

In *Bottenberg* v. *Nixon*, 97 Ind. 106, it is held, that the warehouseman is bound to keep sufficient grain on hand to meet the demands of depositors, and that if he fails to respond to a demand by delivering wheat in quantity and quality such as that received, he is liable, unless some accident not attributable to his fault or negligence caused the destruction of the grain.

In *Baker* v. *Born*, 17 Ind. App. 422, it was said to be the law in this State, that where a warehouseman re-

ceives grain on deposit for the owner, to be mingled with other grain in a common receptacle, from which sales are made, the warehouseman keeping at all times sufficient grain of like kind and quality for the depositor, and ready to deliver to him upon demand, the contract is one of bailment; and that the duty of the warehouseman is to deliver to the depositor, upon demand and the payment or tender of any agreed storage charges, grain of the same kind and quality as that so received. See, also, *Woodward* v. *Semans,* 125 Ind. 330.

In *Lyon* v. *Lenon, supra,* it is said, that a contract of bailment contemplates the return of the goods bailed, or, growing out of the necessities of commerce, where grain is delivered in store, other grain of like quality and grade may be returned in its stead.

In *Bottenberg* v. *Nixon, supra,* the depositor knew of the custom of the warehouseman to deposit the grain received from depositors in a common bin with wheat bought by him, and to sell wheat therefrom, while in *Rice* v. *Nixon, supra,* the depositor had no knowledge of this custom.

Where a receipt is so drawn as to constitute a contract, it may be interpreted and construed in the light of commercial usage. See *Schindler* v. *Westover, supra; Pribble* v. *Kent,* 10 Ind. 325.

Comparing and harmonizing these authorities, it may be concluded that such receipts as that given by the appellees to the appellant may be construed by adopting the meaning of their own terms as explained by commercial usage, and that when a warehouseman is engaged in the business of receiving grain in store and mingling the grain received from depositors in common receptacles with his own grain, or that received in store from other depositors, and it is a part of his business to sell and ship the grain so stored, the

various owners of the grain so stored, including the warehouseman, if any of his own wheat be so mingled, and all the various depositors, are tenants in common of the entire quantity of the commingled grain. Such a depositor who has received such a receipt as that above set out is the owner of an undivided portion of the grain; not only while his own grain is actually present in the common store, but his title as tenant in common would continue, though his identical grain has been sold in the course of trade by the warehouseman, while any grain so deposited by any of the various depositors remains in store, unless the holder of the receipt has received back his wheat or a like quantity of wheat of the same kind and quality, or has otherwise parted with his ownership. If at a given time there be in the common receptacle as much wheat as all such owners have deposited, so that all of them could find there the same quantity of wheat that they deposited, of the same kind and quality, then each would own in said receptacle the quantity deposited by him; but if at any time the whole mass were less than the aggregate deposits, then all the depositors, or tenants in common, would together own all the grain, but each depositor would have an undivided share less than the quantity deposited by him, being such proportion of the grain remaining in store as his deposit would bear to the aggregate of the other deposits.

If at a time when there was not enough grain in the warehouse to satisfy full demands of all depositors, the warehouse and its contents were destroyed by fire without the fault of the warehouseman, while he would not be responsible for such loss, he would be responsible for the conversion of such a quantity of wheat as he had sold which was not represented by wheat so destroyed. This seems to be but simple justice.

Baltimore and Ohio Southwestern R. W. Co. *v* McCartney.

If at the time of the fire here in question, there was not in store enough wheat to have satisfied demands under receipts of all depositors, the entire quantity deposited by the appellant was not so destroyed, but only his individual share remaining in the warehouse, which would be less than the quantity represented by his storage receipts, and the appellees would be bound to reimburse him for their sale and conversion of a quantity sufficient when added to his individual share of the destroyed wheat to equal the quantity represented by the receipt. To such an extent he would be damaged within the meaning of the statute. In this view of the matter, the third paragraph of answer to the second and third paragraphs of complaint was insufficient on demurrer.

The judgment is reversed, and the cause is remanded with instruction to proceed in accordance with this opinion.