CENTRAL TRUST CO. v. LOUISVILLE TRUST CO.

(Circuit Court of Appeals, Sixth Circuit.  March 15, 1900.)

No. 749.

1. INDEMNITY—ENFORCEMENT OF CONTRACT—JURISDICTION OF EQUITY.

A court of equity cannot compel an indemnitor to comply with his obligation in advance of the contingency upon which by such obligation he was to become liable.

2. SAME—CONSTRUCTION OF CONTRACT.

A majority of the holders of railroad bonds joined in a request to the trustee to foreclose the mortgage, agreeing in the same paper to "indemnify and hold harmless the said trustee from any loss or damage on account of costs, counsel fees, and other expenses of such litigation." The trustee employed counsel, and instituted a suit in foreclosure in which a decree was obtained, which, inter alia, fixed the complainant's solicitor's fees, and directed their payment, with other costs, from the proceeds of the mortgaged property, in accordance with the terms of the mortgage. The proceeds of the property, however, were exhausted in the payment of prior liens, leaving nothing to apply on such decree. The trustee thereafter brought suit in equity against its indemnitors to require them to pay the fees of its counsel as so determined. *Held*, that the trustee did not occupy the relation of a surety as to such fees, so as to entitle it to invoke the aid of a court of equity by an anticipatory decree for its protection, but that the liability of the defendants was a legal one, measured solely by their contract, which contained no agreement to pay counsel fees, and upon which no cause of action arose so long as the trustee had suffered no loss or damage, and had not even been adjudged liable for any of the matters on account of which it was to be indemnified.

Appeal from the Circuit Court of the United States for the District of Kentucky.

For opinion on demurrer to bill, see (C. C.) 87 Fed. 23.

Alex P. Humphrey, for appellant.

St. John Boyle, Edmund F. Trabue, and Wm. Marshall Bullitt, for appellee.

Before TAFT, LURTON, and DAY, Circuit Judges.

100 F.—35

LURTON, Circuit Judge. Stripping the case of everything unnecessary to be stated in view of the single question on which the case must turn, it is this: The complainant below (appellant here) is the trustee under a mortgage made by a railroad company to secure a large issue of the company's coupon bonds. Defaults in the payment of interest upon these bonds occurred. The mortgage, in substance, provided that, if such default should continue for six months, a majority of the holders of the bonds might, at their option, precipitate the maturity of the principal of the bonds by giving to the trustee written notice of the exercise of such option. It also provided that it should be the duty of the trustee, upon request of a majority of the bonds outstanding, due and unpaid, to institute proceedings in some court for the foreclosure of the mortgage by judicial sale, but that the trustee should not be required to take such proceedings until the bondholders making the request should have indemnified it against "costs, counsel fees, and other expenses of litigation." The defendants below (appellees here), claiming to be a majority of the holders of the bonds, gave the trustee notice that they elected to mature the principal of the bonds, and requested it to institute proceedings for a judicial foreclosure of the mortgage by a sale of the mortgaged railroad, and in the same paper agreed "to indemnify and hold harmless the said trustee from any loss or damage on account of costs, counsel fees, and other expenses of such litigation." In compliance with this request, the trustee employed counsel, and instituted suit for the enforcement of the lien of the mortgage. A protracted and complicated litigation resulted in a decree for the sale of the mortgaged property, and the application of the proceeds—First, to the payment of the receiver's debts; second, to the payment of certain mechanic's lien claims; and, next, to the payment of the mortgage debt. A sale occurred, but at such a price that the liabilities, having priority over the mortgage bonds, absorbed the entire proceeds, and the bondholders received nothing. The bill, in substance, alleges that the complainant incurred a liability to certain solicitors, who are made defendants, for counsel fees aggregating $17,500, and that the amount of these fees was adjudged by the decree of foreclosure, and ordered to be paid first out of the proceeds of the mortgaged premises, in accordance with a provision to that effect in the mortgage. Inasmuch, however, as the claims having priority over the mortgage exhausted the entire property, the direction to pay these fees could not be executed. The bill further charges that the trustee has come under a liability to pay to its said counsel the fees so adjudged, and that the counsel have made demand for payment. The prayer of the bill is that the court will compel the indemnitors to discharge the obligation which the complainants had, at their request, and under this covenant of indemnity, so incurred.

The covenant sought to be enforced is not one to pay the counsel fees incurred by the trustee, but "to indemnify and hold harmless the said trustee from any loss or damage on account of costs, counsel fees, and other expenses of such litigation." The complainant has not paid anything on account of the counsel fees so incurred, and

has not, therefore, suffered any "loss or damage" on account thereof, and confessedly could not maintain any action at law for a breach of the covenant. Wicker v. Hoppock, 6 Wall. 94, 18 L. Ed. 752; Mills v. Dow's Adm'r, 133 U. S. 424, 10 Sup. Ct. 413, 33 L. Ed. 717; Johnson v. Risk, 137 U. S. 308, 11 Sup. Ct. 111, 34 L. Ed. 683. These cases emphasize the distinction between a covenant to pay and one to indemnify, and hold that an action will lie for a breach of a covenant to pay before actual payment by the plaintiff, but not upon a mere covenant of indemnity until the plaintiff has actually sustained loss or damage. Learned counsel concede that this distinction is one well recognized at law, but contend that a court of equity will, on the principles of a quia timet bill, compel the specific performance of the contract of the indemnitor in advance of any actual loss or damage, even though the covenant be one of simple indemnity. That a bill quia timet will lie in favor of a surety, before payment, to be exonerated by a decree compelling the debtor to pay off the obligation hanging over him, may be conceded. Story, Eq. Jur. §§ 327, 730, 850. The case of Lee v. Rook, Mos. 318, cited by counsel for appellant, is one (if not the earliest) authority in support of the doctrine. Wolmershausen v. Gullick [1893] 2 Ch. 514, also cited by same counsel, was a bill by a surety, against whom a judgment had been rendered for the whole debt, but who had paid nothing, to compel his co-surety to exonerate him by paying to the creditor his proportion of the joint liability. The rule giving to a surety the right to compel his principal to pay the obligation, and thus relieve him from liability, does not necessarily apply to the case in hand, for there exists a distinction between the relation of surety and principal and that of indemnitor and indemnitee. This distinction was pointed out in Antrobus v. Davidson, 3 Mer. 569, 578, by Sir William Grant, master of the rolls. The bill was one seeking to compel the defendant to relieve the estate of the complainant's testator from liability to the government on account of alleged defaults of certain agents of the testator, for whom the testator was, under the law, responsible, by paying and discharging any sum for which the testator's estate should stand liable by reason of such defaults. These agents had given bond to the testator, and Davidson, the defendant, had bound himself to indemnify the testator "against all costs, charges, and expenses which should or might be incurred by the neglect or default (of said agents) in the premises, or in any manner relating thereto." The contention of counsel for the complainant was, that the testator stood in the situation of a surety, and that, as a surety, he was entitled to exoneration in anticipation of any loss or damage, and for this relied chiefly upon Lee v. Rook, Mos. 318, and Ranelaugh v. Hayes, 1 Vern. 190. Sir William Grant, among other things, said:

"In the case of an ordinary money bond there is no distinction, upon the face of it, between the principal and the surety; but it is otherwise in the case of a bond of indemnity. In the present instance, Mr. Davidson stipulates for no act of his own. He had no money to receive, no account to settle; but, as surety for Messrs. Ross and Ogilvie, he engages that they shall duly account, and that he will indemnify Sir William Fawcett against the consequences of their neglect or default. In doing this Mr. Davidson incurred a

definite legal obligation. Then, the first question that arises is, why should the plaintiffs come into a court of equity to enforce a mere legal obligation? They say, because, as the representatives of Sir William Fawcett, they stand in the situation of a surety, and, as a surety, are entitled in equity to a relief which they cannot obtain at law. It is true that a surety may come here to compel the principal to relieve him of his liability, by paying off the debt. But Sir William Fawcett's representatives and Davidson do not stand in the relation of principal and surety in the sense in which the rule of equity considers that relation. Whatever loss there may be, it is true, will ultimately fall on Davidson, and, therefore, in a certain sense, Davidson may be legally considered the principal debtor; but in equity he is no more the proper debtor than Sir William Fawcett. Both are answerable for Ross and Ogilvie; and, though Davidson is bound to keep Sir William Fawcett indemnified, that obligation does not arise out of any principle of equity, but is created by special convention between the parties. Except for the bond, Davidson would have nothing to do with the debts of Ross and Ogilvie. The bond, therefore, which alone created, must determine the extent of, his liability. There is no principle upon which a court of equity can extend the legal effect of the bond. Its legal effect is to protect against the consequences of future deficiencies, but not to entitle the party to call for anticipated and precautionary payment by way of preventing the risk of his being hereafter damnified."

The same distinction was noted in the case of Hoy v. Hansborough, 1 Freem. Ch. (Miss.) 533, 544, where the learned chancellor said:

"The relation between the parties to a bond of indemnity is in no equitable sense analogous to that of principal and surety. The right of a surety to call for precautionary payment of his principal does not arise from any contract between them, but rests exclusively upon the doctrine and principles of a court of equity; whereas, the rights of parties to a bond of indemnity arise from a definite, legal obligation, created by express contract, having no dependence upon abstract principles of equity."

The indemnitors, under the covenant here involved, came under no obligation whatever to the counsel employed by the complainant, and did not agree with complainant to pay such fees, but to "indemnify" the trustee against any such charges. The mortgage provided that all such costs, charges, and expenses incurred by the trustee in foreclosing should be first paid out of the proceeds of any foreclosure sale; and in accordance with this stipulation the counsel fees of the trustee were settled in the decree of foreclosure, and ordered to be paid out of the proceeds of sale. If the proceeds of sale had been sufficient, the burden would have fallen upon the railroad company as the party primarily liable for the costs and expenses incident to its default. The decree adjudging the fees to be paid the trustee's counsel cannot, therefore, be regarded as a determination of either the amount or the liability of the trustee to such counsel in the event the proceeds of sale should prove inadequate. The trustee and its counsel were not in antagonism, for the former was represented by the latter. The decree was but a determination that under the stipulations of the mortgage the trustee's counsel should receive the sums settled out of the proceeds of the sale of the mortgaged premises. It is true that the bill avers that the fees settled were reasonable, and that the complainant "is bound, therefore, to the counsel so employed." But, in view of the friendly character of the suit between appellant and the counsel, who are defendants to the bill, as shown by the evidence touching upon the circumstances under which the

counsel were employed, these averments must be regarded as made in the interest of counsel, and for the purpose of determining the liability of the indemnitors for the amounts claimed by the trustee's counsel, and not as a solemn admission of a fixed liability.

Whether complainant is under any legal liability to counsel is a question of doubt, upon the facts of this record. Upon that question we find it unnecessary to express any opinion. The court below, upon the facts and circumstances, reached the conclusion that the counsel employed by appellant accepted employment in sole reliance upon the provision of the mortgage, which provided for first paying all such costs and charges in the event of foreclosure under the decree, and that the appellant was not personally liable. Thus the appellant has not actually paid anything, has never been adjudged liable to pay anything, and may never be held legally bound. Under these circumstances we do not see any ground upon which we can hold that there has been any breach of the contract into which the indemnitors entered. The suit is, therefore, premature. The question, when relief in anticipation of an actual loss sustained is sought through the power of a court of equity to compel a specific performance, is whether or not the contingency has arisen upon which the liability of the indemnitors has become absolute. If the contingency has arisen, relief will be granted. The cases bearing upon this subject will be found to turn upon this inquiry, and, when relief has been granted before any actual loss or damage to the plaintiff has been sustained, it will be found that the decree was based upon some term of the covenant which called into exercise the active interposition of the court upon the ground that the contingency had arisen which made the covenantor liable. Thus, in Ranelaugh v. Hayes, 1 Vern. 189, the covenant, as stated in the very meager report of the case, was one by which the covenantor agreed "to stand in the place" of the complainants "touching the payments to the king and other matters that were to have been performed by him." The covenant "to stand in the place" of another who was bound to make certain payments is, in substance, a covenant to pay, and very much more than a simple covenant to indemnify and save harmless. Champion v. Brown, 6 Johns. Ch. 398, was decided upon the authority of Ranelaugh v. Hayes, and was much like it in respect to the effect of the covenant. The case was this: Paddock, by written agreement, purchased a tract of land from Champion & Storrs, to be paid for in six annual installments, and died, leaving the purchase incomplete. His administrators, being unable to complete the payments, assigned the contract to Brown, Brown taking from them a covenant that they would "take up and cancel" the contract made with Paddock, or, in case the vendors refused to give up and cancel said contract, "then to indemnify and save harmless the administrators of Paddock" against the obligations of said assigned contract. The learned chancellor construed the covenant as one which bound the assignees of the contract "to relieve the estate of Paddock from the burden of that contract." "This," said he, "is the true intent and meaning of the agreement, and it is just that they should be decreed to clear the representatives of Paddock from the

charge which they assumed for them as it is that a principal debtor should exonerate his surety before he is sued, and not leave a cloud always hanging over him." The case, therefore, turned upon the provision of the covenant which bound the defendants "to take up and cancel" the assigned contract. This they had not done, and this was the breach which justified a decree compelling performance by payment of the obligation of the assigned contract. Wooldridge v. Norris (1868) 6 Eq. Cas. 410, was upon a peculiar state of facts. A security on a bond to secure a money debt was secured by another bond of indemnity entered into by the principal debtor's father, who had died, having by will devised certain property specifically upon trust to pay the debt. The creditors having called upon the surety to pay the debt, the surety applied to the executors, who said they had no funds in hand, and were unable, under the will, to raise the money by sale of any part of the testator's estate, except under a decree of the court. The surety filed a bill against the executors, praying that they, as executors and trustees, might be directed, out of their testator's estate, to pay the said debt, and thus indemnify the complainant against his said bond. The bond of indemnity bound the testator to pay to the surety "all such sums of money, costs, damages, and expenses which they respectively may be called upon and be liable and compelled to pay by reason of or in consequence" of the bond upon which the surety was bound. The vice chancellor, passing upon the objection that a state of circumstances had not arisen to give the plaintiff the right to file his bill, among other things, said:

"In this case the bond was an actual bond for indemnity, and the person to be indemnified was a surety on another bond. No doubt a bond of indemnity can be framed in such a way as to preclude the surety indemnified thereby from filing the bill until he has actually paid something on behalf of his principal. But the terms of this bond are these: [His honor read the words.] And then the bill contains the following allegation: [His honor read the clause in the bill set out above, and continued.] The meaning of that paragraph is clearly this: that the plaintiff has been called upon to pay within the terms of the latter clause of the above instrument. I think, therefore, that the exact state of circumstances has arisen which was contemplated by the framers of this bond to entitle the plaintiff to file this bill."

The case turned upon the meaning to be attached to the terms of the covenant. The plaintiff had not paid, but he had been "called upon to pay," and this the court held was the contingency upon which the indemnitor was to become liable. Both Ranelaugh v. Hayes and Wooldridge v. Norris presented special circumstances distinguishing the covenants involved from mere covenants for indemnity against loss or damage, and this view of both cases was taken in subsequent opinions of the chancery division of the supreme court of judicature. Thus, in Wolmershausen v. Gullick [1893] 2 Ch. 514, 525, it was said that "the judgment [in Wooldridge v. Norris] proceeded on the particular terms of the covenant," and in Hughes-Hallett v. Indian Mammoth Gold Mines Co., 22 Ch. Div. 561, Fry, J., when Wooldridge v. Norris was cited, said: "That case depended on the construction of the bond. The contingency provided against had actually arisen." In the case of Hughes-Hallett v. Indian Mam-

moth Gold Mines Co., cited above, the facts were that the complainant had applied for and held shares on trust for an adult cestui que trust, who paid the money due to the company on the application and allotment. Subsequently, the trustee assigned the shares to his cestui que trust, and the latter required the company to register the transfer, which it refused to do. Later a winding-up order was made, the name of the trustee standing on the books as the owner of the shares. Upon this case the trustee sought to have his cestui que trust indemnify him against liability for future calls on these shares. There being no evidence to show whether calls were likely to be made in the winding up, the bill was dismissed, because no liability had yet arisen which could give rise to an action upon the obligation of indemnity. After stating that the defendant, the real owner of the shares, was liable to indemnify the plaintiff in respect to the unpaid sums payable on the shares, Fry, J., speaking for the court, said:

"But then arises this fact for consideration, namely, that no part of the 15s. has been called for, and, for anything that appears in evidence before me, no part ever will be called for. Whether it will in fact, of course I cannot tell. It appears to me, therefore, that this is the simple case of a person who has taken property in his own name on behalf of another, and who is entitled to an indemnity for that other person against liability in respect of that property, suing for an indemnity before the contingency which creates the damage has risen. It is, in my judgment, a mere action quia timet, and it is a very important inquiry whether such an action can be maintained. If it can, it is obvious that every person who has undertaken a position of responsibility for another, which entitles him to an indemnity, may sue before the right to indemnity accrues,—before the damage has accrued which gives rise to the right to indemnity. It appears to me that there is no authority for such an action. The case of Lord Ranelaugh v. Hayes is, so far as I am aware, the only authority which countenances such a view, and, as I observed on a previous occasion, that case has never, so far as I am aware, been followed. I can see, therefore, no authority binding me to pronounce such a judgment, and I must decline so to enlarge the jurisdiction of the court. It appears to me that it would lead to most injurious consequences if I were to allow a person in the position of the plaintiff to seek for an indemnity before he is injured. There have been, undoubtedly, cases in which, where a contract for indemnity existed, and a right to sue upon that contract had arisen, the court has declared the right to indemnity generally, and has put matters in such a train that, when the subsequent right to indemnity should arise, the indemnity might be worked out."

Section 850, Story, Eq. Jur., furnishes no authority for a decree in advance of the contingency. The meaning of the learned author is made plain by his illustration taken from Ranelaugh v. Hayes, cited above, where the obligation was to "stand in the place" of the covenantee in respect to payments which the latter was required to make. The breach was complete upon evidence that payments had been called which the covenantee was bound to make. No case cited by Judge Story in support of his text, nor by the learned counsel for appellant, will authorize a court of equity to compel an indemnitor to comply with his obligation in advance of the contingency upon which, by his obligation, he was to become liable. In the case before us there is a simple obligation to indemnify the Central Trust Company against any loss or damage it may sustain by being made personally responsible for the fees of counsel engaged to foreclose the mortgage in which the indemnitors were personally interested. Both

parties contemplated that the mortgaged property would be primarily liable for such expenses. , The contingency upon which the indemnitors are to become liable has not arisen, because the trustee has not yet suffered any loss or damage, and, for all that is here shown, may never suffer such loss.

The cases of Hoy v. Hansborough, 1 Freem. Ch. (Miss.) 533, and Bank v. Hastings, 1 Doug. (Mich.) 224, 256, et seq., are much more in point than any cases we have had called to our attention. The covenants upon which the indemnitors were sued in each of the cases cited were simple covenants "to save harmless and indemnify" against loss and damage, and were substantially identical with the covenant upon which this action was brought. In neither had any loss been actually sustained. A mere possible legal liability to pay was in both cases held insufficient to satisfy the terms of the bond, and in each case relief was denied upon the ground that the contingency provided by the bond had not arisen. The opinions are well reasoned, and most of the authorities now relied upon by counsel for complainant were considered and distinguished.

The decree of the court below must be affirmed upon the ground that the contingency upon which the liability of the indemnitors depends has not arisen, and the action is premature. The costs of appeal will be divided.