### In re LATHROP, HASKINS & CO.

(Circuit Court of Appeals, Second Circuit. July 8, 1914.)

No. 261.

1. PRINCIPAL AND AGENT (§ 85*)—LOSSES BY AGENT—INDEMNIFICATION.

An agent is entitled to be indemnified by his principal for losses arising by reason of acts done in the course of the agency, providing the agent's acts or transactions are not contrary to law.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 224–228; Dec. Dig. § 85.*]

2. JOINT ADVENTURES (§ 4*)—STOCK POOL—LOSSES—RIGHT TO INDEMNITY.

L. & Co. organized a stock pool to deal in the stock of a specified railroad company; F. & Co. subscribing to the extent of $2/17$ in one venture and $1/5$ in another. L. & Co. as agents of the subscribers gave the buying and selling orders, and when stock was bought would pay for it and deliver it among the subscribers in proportion to their respective interests, and when it was sold would call on the subscribers to furnish the stock for delivery in the same proportions. On January 19, 1910, L. & Co. bought stock for the pool, but on that day they failed, and because of their failure did not take or pay for the stock, nor was any portion thereof tendered to the subscribers, nor any demand made on them to contribute to the purchase price; the stock being resold for the account of L. & Co., causing a heavy loss. Held, that the loss was caused, not by the carrying out of the duties of L. & Co., under the pool contract, but by their insolvency only, and hence F. & Co. though having failed on the same day, could not be compelled to contribute any portion of such loss.

[Ed. Note.—For other cases, see Joint Adventures, Cent. Dig. §§ 3–6; Dec. Dig. § 4.*]

3. INDEMNITY (§ 9*)—MEASURE OF DAMAGES.

The measure of damages for breach of a contract of indemnity is not the amount of liability incurred, but the amount actually paid by the person indemnified on account of the loss.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. §§ 16, 17; Dec. Dig. § 9.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the District Court of the United States for the Southern District of New York.

This cause comes here on appeal from the order of the United States District Court for the Southern District of New York, dismissing a petition for the review of an order made by a referee in bankruptcy. See, also, 184 Fed. 534.

Hays, Hershfield & Wolf, of New York City (Ralph Wolf, of New York City, of counsel), for Irving L. Ernst et al., as trustees, etc.

Abram I. Elkus and William A. Barber, both of New York City (Abram I. Elkus, and William E. Collins, both of New York City, of counsel), for respondents.

Before COXE and ROGERS, Circuit Judges, and HAND, District Judge.

ROGERS, Circuit Judge. The appellants are the trustees in bankruptcy of J. M. Fiske & Co. and others, bankrupts, and they allege that Lathrop, Haskins & Co., bankrupts, were, at and before the filing of the petition in bankruptcy against them, and still are, justly and truly indebted to the firm of J. M. Fiske & Co. in the sum of $123,-578.79. On the same date that Lathrop, Haskins & Co. became bankrupt, J. M. Fiske & Co. also failed, the failure of each having been occasioned by a severe decline in Columbus & Hocking stock. The appellants have an admitted claim against the estate of Lathrop, Haskins & Co. of $103,485.17. The question involved is whether or not there should be set off as against this admitted liability the sum of $22,812.38 as claimed by the trustee of Lathrop, Haskins & Co.

It appears that in March and July, 1909, certain New York Stock Exchange houses, including, among others, Lathrop, Haskins & Co. and J. M. Fiske & Co. entered into two joint ventures for the purchase and sale of shares of the common stock of the Columbus & Hocking Coal & Iron Company. J. M. Fiske & Co. subscribed therein to the extent of $2/17$ thereof in one joint venture, and $1/5$ thereof in the other joint venture. Lathrop, Haskins & Co., as the agents of the joint ventures, gave the buying and selling orders for the stock. When stock was bought it was distributed by Lathrop, Haskins & Co. among the participants in the joint ventures in proportion to their respective interests. When stock was sold the participants in the joint undertaking were called upon by Lathrop, Haskins & Co. to furnish the stock for delivery, in proportion to their respective interests.

On January 19, 1910, brokers, acting upon instructions from Lathrop, Haskins & Co., bought a total of 2,600 shares of Columbus & Hocking Coal & Iron Company stock at a total cost of $217,562.49. This was the day on which Lathrop, Haskins & Co. failed, and because of their failure they did not take and pay for this stock, as had been their custom in the past in respect to stock purchased for the joint adventure or pool. If they had proceeded as respects this purchase according to the method they pursued as respects the other purchases previously made by them for the pool, they would have taken and paid for this stock and then distributed it among the members of the pool, including J. M. Fiske & Co., and thereupon, under the terms

of the pool agreement, such members would have been obligated to accept and pay for their proportionate share of said stock. Lathrop, Haskins & Co. never made any demand or request upon J. M. Fiske & Co. to purchase or take up their proportion of the shares, and they never tendered such shares. And as Lathrop, Haskins & Co. did not themselves, according to their custom, take and pay for the stock, it was resold and brought only $69,929, causing a loss to Lathrop, Haskins & Co. of $147,633.49.

The trustee in bankruptcy of Lathrop, Haskins & Co. claims that he should be allowed to offset against the claim filed by J. M. Fiske & Co. for $103,485.17 the sum of $22,812.38, representing J. M. Fiske & Co.'s proportionate share of the total loss of $147,633.49 suffered by Lathrop, Haskins & Co. The referee in bankruptcy allowed the claim made by Lathrop, Haskins & Co., and ordered the claim of J. M. Fiske & Co. reduced by the sum of $22,812.38. And on petition to review the District Judge affirmed the action of the referee.

[1] The case was decided in the court below upon the principle that an agent is entitled to indemnity from his principal for losses occurring in the due execution of his agency. We do not understand that any one questions the principle that an agent must be indemnified by those for whom he has acted against loss arising by reason of acts done in the course of the agency. The principle is an old and well-established one which entitles the agent to call upon his principal to indemnify him against the consequences of all acts done by him in the execution of his agency, provided the actions or transactions are not contrary to the law. In the language of the Supreme Court in Bibb v. Allen (1893) 149 U. S. 481, 498, 13 Sup. Ct. 950, 956 (37 L. Ed. 819):

"Speaking generally, the agent has the right to be reimbursed for all his advances, expenses, and disbursements incurred in the course of the agency, made on account of or for the benefit of his principal, when such advances, expenses, and disbursements are reasonable, and have been properly incurred and paid without misconduct on the part of the agent. * * * It is another general proposition, in respect to the relation between principal and agent, that a request to undertake an agency or employment, the proper execution of which does or may involve the loss or expenditure of money on the part of the agent, operates as an implied request on the part of the principal, not only to incur such expenditure, but also as a promise to repay it."

[2] But the question we have to consider is whether the facts of this case bring the transaction within the operation of the rules thus stated. Was the loss which Lathrop, Haskins & Co. incurred a loss incurred without fault on their part and without violating their duties as agent? The claim is made that, inasmuch as Lathrop, Haskins & Co. failed to take and pay for the stock which they purchased, they were never in a position to deliver it to J. M. Fiske & Co., the latter were never under any obligations to take and pay for their proportionate part of it. And that as no demand or request was ever made upon J. M. Fiske & Co. to purchase or take up their proportionate part of the shares and no tender of the shares was made, no obligation existed to reimburse Lathrop, Haskins & Co. for the loss they incurred. In other words,

it is asserted that Lathrop, Haskins & Co. failed to perform their contract, and therefore are not entitled to indemnity.

In Duncan v. Hill, L. R. 8 Ex. 242 (1873) the facts were as follows: The plaintiffs were brokers, and bought for the defendant certain shares of stock for the account of July 15th; on that day by the defendant's instructions they carried them over to the account of July 29th, and paid differences amounting to £1,688; on July 18th the brokers, being unable to meet their engagements, by reason of various persons for whom they had made contracts (the defendant being one) failing to make their due payments, were declared defaulters, and, according to the rules of the Stock Exchange, all their transactions were closed, at prices current on that day. The result was to make the brokers liable to pay a further sum for differences upon the stocks and shares so carried over by them, and they sought to recover this difference, together with the £1,688 from the defendant. As to the latter claim no contest was made, but the defendant denied the right to recover the former claim. The court decided for the defendant, and held that as the loss incurred by the brokers arose from their own default by reason of their insolvency brought on by want of means to meet their other primary obligations, and that as there was no evidence that such insolvency was occasioned by reason of their having entered into the contract for the defendant, the latter was not liable.

So in the case at bar the loss incurred by the brokers Lathrop, Haskins & Co. arose from their own default. There is nothing in the record which shows that any demand was made upon J. M. Fiske & Co. or upon any of the other members of the pool, and if no such demand was made and no opportunity afforded to them to turn over to Lathrop, Haskins & Co. their respective proportions of the money needed, they were not in default, but the default was solely the default of Lathrop, Haskins & Co. The default is the same whether under the agreement of the parties, Lathrop, Haskins & Co. had or had not a right to call upon the parties to the pool to furnish the money for the purchase of the stocks before they were prepared to make delivery of the stocks. If we concede, for the purpose of argument, that Lathrop, Haskins & Co. had a right to ask for payment before they had possession of the stocks, they never exercised the right. It is said that if they had made a demand on J. M. Fiske & Co., the latter could not have complied with it, as the bankruptcy of that firm occurred on the same day. Non constat that J. M. Fiske & Co. would not have raised sufficient money to have met this particular obligation, if obligation it was, had the demand been made. Neither does it appear from anything upon the record that the failure of Lathrop, Haskins & Co. to take the stock would have been avoided if J. M. Fiske & Co. had supplied their proportionate part of the money needed to complete the payments. It is true that tender is waived where it is useless to make it. And it is urged that as the bankruptcy of J. M. Fiske & Co. occurred on the very day that that of Lathrop, Haskins & Co. occurred, the tender would have been useless. But we think that if the principle referred to is to have any application to the facts of this case, it should affirmatively appear that the default of Lathrop, Haskins &

Co. as to this stock happened after, and not before, the receiver of J. M. Fiske & Co. had been appointed. But even if that affirmatively appeared to be the fact, we do not wish to be understood as intimating that in our opinion the claim now made against J. M. Fiske & Co. could be sustained.

There can be no implied obligation to indemnify a broker for a default which is due to his own insolvency brought on by want of means to meet his own personal obligations. And if a broker or agent seeks to recover upon the theory of an implied obligation to indemnify him against losses, the burden must be upon him to show that the loss was occasioned by the default of the principal, and was not occasioned by the broker's own default or insolvency or failure to do his duty. He must show that the loss for which he seeks indemnity would not have occurred but for the default of the principal. If this be the law, then it would be necessary that the trustee for Lathrop, Haskins & Co. should show that the default made by them was not due to their own insolvency and inability to meet their own obligations, but was occasioned by the failure of their principal, J. M. Fiske & Co., to meet theirs. This they have not done. And even if it were to be conceded that J. M. Fiske & Co. were in default, although no demand had ever been made upon them, and although Lathrop, Haskins & Co. were in no position to make a demand under the terms of the agreement, not having obtained the stocks, still it would be incumbent to show that it was the default of J. M. Fiske & Co., and not the insolvency of Lathrop, Haskins & Co., which occasioned the loss if indemnity is to be made. In Duncan v. Hill, supra, the defendant, along with many others, was in default, but the fact of the defendant's default did not entitle the plaintiff to his indemnity because the loss was not due to the defendant's default but to the plaintiff's insolvency.

The agreement between the parties to this pool seems to have been an agreement on the part of Lathrop, Haskins & Co. that that firm would purchase certain shares of stock, and that after it had been so purchased and paid for by them they would distribute it among the members of the pool, who would then reimburse Lathrop, Haskins & Co. according to their respective interests. That this was the understanding seems to be shown by the conduct of the parties in their prior dealings. The stipulated facts show that if Lathrop, Haskins & Co. had taken and paid for the stock, they might have been in a position then to assert a claim against J. M. Fiske & Co. for the cost of their proportionate share. As Lathrop, Haskins & Co. never fulfilled the condition, they have no claim which they can assert.

[3] The court below seems to have confused a distinction which exists between a covenant to pay money and a covenant to indemnify. The theory of the court appears to have been that there was an obligation on the part of J. M. Fiske & Co. as a principal to indemnify Lathrop, Haskins & Co. as agents for losses incurred in the purchase of these stocks. But in the final adjustment of the claim it seems to have proceeded upon the theory of a covenant to pay money, and not upon the theory of indemnity. For it allows the whole claim of $22,-812.38. But the measure of damages in contracts of indemnity is not the amount of liability incurred, but the amount actually paid by the

person indemnified on account of the loss. See Central Trust Co. v. Louisville Trust Co., 100 Fed. 545, 546, 40 C. C. A. 530, 531 (1900); the court through Mr. Justice Lurton, after citing Wicker v. Hoppock, 6 Wall. 94, 18 L. Ed. 752 (1867), Mills v. Dows, 133 U. S. 424, 10 Sup. Ct. 413, 33 L. Ed. 717 (1890), and Johnson v. Risk, 137 U. S. 300, 308, 11 Sup. Ct. 111, 34 L. Ed. 683 (1890), says:

"These cases emphasize the distinction between a covenant to pay and one to indemnify, and hold that an action will lie for a breach of a covenant to pay before actual payments by the plaintiff, but not upon a mere covenant of indemnity, until the plaintiff has actually sustained loss or damage."

Now Lathrop, Haskins & Co., being bankrupt, it must be conceded, can never pay the full amount of the claim of the brokers for $147,-633.49, due because of the failure to take the stocks in question. And assuming that any liability of indemnity exists against J. M. Fiske & Co., it is only a right to be indemnified by the latter for such a proportionate share of $147,633.49 as the estate of Lathrop, Haskins & Co. ultimately pays. As only a small proportion of the claim of $147,-633.49 made against Lathrop, Haskins & Co. will ever be paid if the trustees of J. M. Fiske & Co. are made to pay 100 per cent. of their proportionate part of that claim, they will be receiving much more by way of indemnity than they will pay or disburse.

But for reasons already stated we do not think that, either upon the theory of an agreement to pay or upon the theory of an agreement to indemnify, any reason exists at law or in equity for allowing the trustees of Lathrop, Haskins & Co. to assert against the trustees of J. M. Fiske & Co. any claim for a loss incurred by their own default in not completing the purchase of the shares of stock according to their agreement.

The decree is reversed.