**CENTRAL STATES GRAIN CO-OPERATIVE, Inc., v. NASHVILLE WAREHOUSE & ELEVATOR CORPORATION et al.**

No. 4411.

Circuit Court of Appeals, Seventh Circuit.

March 13, 1931.

Harvey B. Hartsock and Charles M. Wells, both of Indianapolis, Ind., for appellant.

Burke G. Slaymaker, Clarence F. Merrell, Albert Ward, Theodore L. Locke, and William P. Herod, all of Indianapolis, Ind., for appellees.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

SPARKS, Circuit Judge.

This is a case in which appellant sues (1) Nashville Warehouse & Elevator Corporation, hereafter referred to as the warehouse, on a warehouse contract; (2) Grain Dealers' National Mutual Fire Insurance Company, hereafter referred to as the insurance company, on a policy of fire insurance executed and delivered to appellant against the loss or damage of its grain by fire; and (3) nine other insurance companies, hereafter referred to as indemnitors, on their several indemnity contracts issued to the warehouse indemnifying the warehouse against loss resulting from the destruction or damage of grain owned by it, and also against loss which it might sustain by the damage or destruction of grain owned by others.

The bill of complaint contains the following allegations: The warehouse owned and operated a public warehouse licensed under the Act of Congress of August 11, 1916, as amended July 24, 1919, and the rules and regulations made thereunder, which provides that such warehousemen, for all agricultural products received by them to be warehoused, must issue warehouse receipts stating, among other things, identification of the grain; and providing that such grain should be stored in an individual bin or compartment designated by lot or cargo numbers, or by letters, numbers, or other clearly distinguishable words or signs, securely affixed, or so marked and placed in the warehouse that the identity of such grain will not be lost. Said warehouse was located at or near Indianapolis, and consisted of two or more buildings, one of which was of wood construction and the others were of concrete.

On or between September 17 and November 2, 1928, appellant delivered to the warehouse about 16,880 bushels of wheat and 2,551 bushels of oats, for which the warehouse issued to appellant United States warehouse receipts, none of which stated that the identity of any of the grain was to be preserved or gave any identification whatever, nor was there any agreement to that effect; and all the grain thus received became a part of the entire mass of grain contained in the warehouse. Prior to September 17, 1928, the insurance company issued to appellant its policy in suit, in the sum of $25,000, whereby it insured appellant against loss or damage by fire to the grain so deposited.

Prior to November 3, 1928, the indemnitors issued to the warehouse their policies of insurance—and they were in force on the last named date—by which they agreed to indemnify the warehouse for such loss as might be sustained by reason of damage to, or destruction of, any grain contained in its elevator, whether such grain belonged to the warehouse or was held by it in storage or in trust or for the benefit of any other. The aggregate amount of said indemnifying policies exceeded $100,000.

Appellants are unable to describe the last-named policies in greater detail or to set forth copies by reason of the fact that they were in the possession and under the control of the indemnitors. The bill does allege, however, that the indemnitors' policies inured to the benefit of all storers of grain in said warehouse during the time said policies were in force.

On November 3, 1928, a fire destroyed the wooden part of the elevator belonging to the warehouse and damaged the remaining part, causing great damage to all the grain stored in the wooden building and some damage to the grain stored in the concrete buildings. As to the exact amount of damage to the grain, appellant has no information, and has been unable to ascertain it, but such information is within the knowledge of appellees.

Prior to the fire, the warehouse had not delivered to appellant any grain, and at the time of the fire appellant was entitled to have delivered to it, by the warehouse, grain of the kind, quality, and quantity as represented by said warehouse receipts, which was then of the value of $26,831.54. Since the fire, the warehouse has delivered to appellant 3,-561 bushels of damaged wheat of the value of $3,488.40, leaving the sum of $23,353.14 due and owing to appellant from appellees; but the proportion thereof due from each appellee is unknown to appellant, and is unascertainable by it without the aid of the court. The bill alleges that timely notice of its loss was given by appellant to appellees; and within sixty days after the fire the warehouse and the indemnitors denied liability therefor, and claim that indemnitors' policies do not inure to the benefit of appellant, and that all of appellant's grain was stored in the wooden portion of said elevator. The bill further alleges that appellant is without knowledge sufficient to make positive allegations as to values or amounts of grain stored, grain dam-

140

aged, lost or salvaged, or of the amounts or terms of the policies issued other than that of the insurance company, and a determination of this cause will involve a long, intricate, and arduous computation and accounting, and it is impossible to file an appropriate complaint upon the law side of the court; that all policies of insurance covering the grain destroyed as aforesaid must contribute to the payment of said loss, and, in order that the respective rights of all the parties hereto may be equitably adjusted and determined, it is necessary that this cause be filed on the equity side of the court.

The bill prays for an accounting to determine (a) the amounts and kinds of grain damaged, destroyed, and salvaged; (b) the proportions, amounts, and extent to which appellant's grain was damaged, destroyed, and salvaged; (c) what grain, if any, the warehouse is obligated to deliver to appellant; (d) the amount of damage suffered by appellant; and (e) the proportions thereof for which each of the appellee insurers is respectively liable.

On motion of the indemnitors, the District Court dismissed the bill on its merits, and from this decree appellant appeals.

Owing to the fact that neither the originals nor copies of indemnitors' policies are filed with the bill, we are limited in our discussion of them to appellant's allegations of fact with relation thereto. These allegations, however, are made with certainty and under oath, and we think they are quite sufficient to determine the questions presented.

Appellant describes these contracts as policies of insurance by which indemnitors agreed to indemnify the warehouse for such loss as might be sustained by reason of damage to, or destruction of, any grain contained in its elevator, whether such grain (1) belonged to the warehouse, or (2) was held by the warehouse in storage or in trust for the benefit of any other. From the other allegations of the bill, it is quite clear that the relation existing between appellant and the warehouse is that of bailor and bailee, and it is well settled that a bailee is liable to the bailor only for such damage to the bailment property as results proximately from the negligence or willfulness of the bailee. Rice v. Nixon, 97 Ind. 97, 49 Am. Rep. 430; Drudge v. Leiter, 18 Ind. App. 694, 49 N. E. 34, 63 Am. St. Rep. 359. Neither negligence nor willfulness being alleged, we may assume that the warehouse is not liable to appellant for the damage done to appellant's grain by reason of the fire. Nor could the warehouse

maintain an action against the indemnitors for appellant's loss. A contract to indemnify and hold harmless is not an original covenant to pay, but is rather an undertaking to repay or reimburse the indemnitee or make good to him the actual loss which he may suffer. One of the characteristic differences between a contract of indemnity and one to pay legal liabilities is that upon the former an action cannot be brought and recovery had until the liability indemnified against is discharged; whereas upon the latter the cause of action is complete when the liability attaches. That there is a distinction between a covenant to pay money and a covenant to indemnify is well recognized. In re Lathrop, Haskins & Co. (C. C. A.) 216 F. 102; Central Trust Co. v. Louisville Trust Co. (C. C. A.) 100 F. 545; Derry v. Morrison, 8 Ind. App. 50, 34 N. E. 107. This court, in United States Fidelity & Guaranty Co. v. Vermont Marble Co., 16 F.(2d) 83, held that, where one has agreed to indemnify another, a plaintiff not named as the indemnitee may not maintain an action on such indemnifying instrument where there is no promise to such plaintiff in the instrument sued on. This principle is supported by In re Gubelman (C. C. A.) 13 F.(2d) 730, 731, 48 A. L. R. 1037; Young v. Schlosser, 65 Ind. 225; E. I. DuPont De Nemours & Co. v. Ferguson, 86 Ind. App. 429, 158 N. E. 488.

In the Gubelman Case above referred to the court said:

"The rule that may be formulated under the federal decisions permits a third person not a party to a contract to enforce the promisor's obligation only where he is the beneficiary solely interested in the promise, and in such case it must appear that the parties intended to recognize the third person as a primary party in interest."

There are no allegations in the bill to indicate that the warehouse and the indemnitors intended to recognize appellant as a party in interest; and it is quite evident that appellant, before the fire, did not rely for protection upon indemnitors' policies, inasmuch as appellant secured sufficient insurance in its own name and on its own grain to fully cover its loss, which insurance was in force at the time of the fire, and that policy is now in suit in this cause. The warehouse was in no manner obligated to insure appellant's grain. No money had been advanced by the warehouse to appellant on the grain, and, so far as the bill reveals, there was nothing due from appellant to the warehouse, and there was no reason why it should secure protection other

than that afforded by an indemnifying policy which would be available in case a fire should occur under such circumstances as would render it liable as bailee. Such circumstances did not arise, and appellant does not claim liability on the part of the bailee on account of the fire. Certainly the warehouse could not recover on indemnitors' policies until a loss to it is shown; and to say that under such circumstances the appellant can recover from indemnitors would indeed be inconsistent.

■ Appellant contends that the word "indemnify" as used in the bill in describing the policies should not be emphasized so as to limit the effect of those policies to mere indemnity of the warehouse, but that said indemnity should extend to and include appellant by reason of the clause which immediately follows the words, "agreed to indemnify the Warehouse," viz., "for such loss as might be sustained by reason of damage or destruction of any grain contained in the elevator, whether such grain belonged to the Elevator Corporation, or was held in storage or in trust or for the benefit of any other." This clause merely refers to the subject-matter upon which the indemnity is to operate, and is in no manner descriptive of the party or parties to whose benefit the indemnity shall inure. Appellant is not named as an indemnitee, either directly or indirectly, and to classify it as such would be doing violence to the language employed. It may be true that appellant's grain was contained in the warehouse, and that it is fully described and included in the terms of the last-quoted sentence referred to above; it must be borne in mind, however, that indemnitors' policies did not insure grain, but they indemnified the warehouse for any loss it might sustain on such grain by reason of fire.

■ The bill alleges that indemnitors' policies inure to the benefit of appellant, but this is merely a conclusion. Of course, it is not harmful to allege a conclusion, provided it is not inconsistent with the facts already pleaded; but where, as in this case, the pleaded facts are inconsistent with the conclusion, the conclusion must be disregarded.

Appellant calls our attention to Home Insurance Co. v. Baltimore Warehouse Co., 93 U. S. 527, 545, 23 L. Ed. 868, and says that case is the very basis of the bill. In that case the Home Insurance Company insured the Baltimore Warehouse Company against loss or damage by fire to the amount of $20,000 on merchandise, hazardous or extrahazardous, their own or held by them in trust, or in which they had an interest or liability, contained in a certain described warehouse. The warehouse company, previous to the fire, had also taken out a policy, substantially in the same form as that issued by the Home Insurance Company, from the Associated Firemen's Insurance Company of Baltimore in the sum of $10,000. Various parties had deposited cotton in storage with the warehouse company as bailee, which company required such depositors to secure separate insurance against fire on their respective property, in their own names, and providing that loss, if any, should be payable to Baltimore Warehouse Company; and this rule, with but few exceptions, was complied with. Practically all of the depositors' policies were held by the warehouse company, and to most of the depositors the warehouse company had advanced money. The warehouse company sued the Home Insurance Company on the policy which that company had issued, in which suit the warehouse company sought to recover from the Home Insurance Company that proportion of the total loss of all the cotton which the amount of the policy of the Home Insurance Company bore to the total amount of all the policies, both general and special. It was contended by the Home Insurance Company that its policy covered only the warehouse company's interest in the goods contained in the warehouse. The court, in affirming the trial court, stated that the policy in suit covered the merchandise held by the warehouse company in storage, and not merely the interest of the bailee in that property, and that therefore the insurers were liable pro rata, and should contribute proportionately. It may also be noted that each warehouse certificate, pursuant to its charter, contained on its face a notice that the property mentioned therein was held by the corporation as bailees only, and was not insured by the corporation. The court said, with relation to this subject: "But we are unable to perceive how these facts can have any bearing on the proper construction of the policy. The company was not prohibited by its charter from obtaining insurance to their full value of the goods left with them in bailment. At most, the requirement of the charter was that they should not themselves become insurers."

It will be noted in the case just cited that the policy was not an indemnifying one, but that it specifically insured all the contents of the warehouse which were owned by such warehouse or which were held by it as bailee, and insurer's liability was not limited to the interest alone of the warehouse. In the in-

142

stant case, however, no such language is used. Instead of insuring the contents of the warehouse, it only indemnifies the warehouse against its loss. We think the distinction is quite clear, and that under the decisions referred to in the foregoing opinion there can be no liability on the part of indemnitors.

There being no liability in this action on the part of either the indemnitors or the warehouse, it necessarily follows that the Act of Congress of August 11, 1916, 39 Stat. 486, as amended by Act Feb. 23, c. 106, 42 Stat. 1282 (7 USCA §§ 241–273), is not involved, and the federal court is without jurisdiction; it being admitted that there is no jurisdiction by reason of diversity of citizenship.

Decree affirmed.