## JOHNSON v. RISK.

ERROR TO THE SUPREME COURT OF THE STATE OF TENNESSEE.

No. 81. Submitted November 18, 1890. — Decided December 8, 1890.

Where, in an action pending in a state court, two grounds of defence are interposed, each broad enough to defeat a recovery, and only one of them involves a federal question, and judgment passes for the defendant, the record must show, in order to justify a writ of error from this court, that the judgment was rested upon the disposition of the federal question: and if this does not affirmatively appear, the writ of error will be dismissed unless the defence which does not involve a federal question is so palpably unfounded, that it cannot be presumed to have been entertained by the state court.

THIS was a bill filed in the Chancery Court of Shelby County, Tennessee, on October 28, 1885, by John Johnson against Thomas L. Risk, L. Tiff Risk, John D. Milburn, H. C. Warriner, Eben L. Risk, a minor, and his guardian, Alice H. Risk, all residing in Shelby County, and Frank L. Duncan and Jennie, his wife, residing in Cincinnati, Ohio. The bill averred that the complainant and one E. F. Risk, since deceased, were co-partners in the city of Memphis, under the styles of Johnson, Risk & Co. and Risk & Johnson, doing a foundry and also a mercantile business; and that on the first day of February, 1875, the firms were dissolved, and for ten thousand dollars paid to complainant, he sold and conveyed to Risk his undivided half of the real estate, and also his interest in the machinery, tools and stock of every kind, belonging to said firms, reserving their bills receivable, book accounts and debts due them, which were to remain the joint property of Risk and complainant, but were to be collected by Risk, and by him accounted for to complainant in the proportion of one-half to complainant and the other to Risk, "in the manner set forth in the deed of bargain and sale executed at the time, and a copy of which is filed with and is a part of this bill, and marked Exhibit 'A.'" It was further averred that "one condition of the said sale was that the said E. F. Risk assumed

the·payment of each and all the debts and·liabilities of every kind whatever of each and both of the said firms of Johnson, Risk & ·Co. and Risk & Johnson, and bound and obligated himself to pay the same and protect and keep the said Johnson harmless from the payment of any part thereof."

The bill then stated that among the liabilities of the firms so assumed by Risk, was one to his son L. Tiff Risk, who declined to sue his father for the debt, notwithstanding he knew of the contract "by which his father had gotten all the assets of the said firms and had agreed to pay all their debts and liabilities," but brought suit therefor against the complainant alone in the Circuit Court of Shelby County, and recovered a judgment therein, April 22, 1878, for $1260.87 and costs; that E. F. Risk never at any time paid any part of this judgment, and on the 27th of August, 1885, the complainant paid L. Tiff Risk $1000 in satisfaction thereof, by giving him his note for $150 due at four months, and another of the same date for $850 due at six months, with endorsers; and that no part of said sum had been repaid complainant, but the whole remained due and unpaid. . Complainant further stated that on the 11th of July, 1878, E. F. Risk filed his petition in bankruptcy in the District Court of the United States for the District of West Tennessee under and in compliance with the act of Congress entitled "An act to establish a uniform system of bankruptcy throughout the United States," approved on the third day of March, 1867, and in such petition asked to be discharged from all his debts and liabilities then existing; that subsequently, on the 20th of December, 1878, a discharge was granted him by the court aforesaid in manner and form as declared in said act; that E. F. Risk died intestate in Shelby County, Tennessee, on the 20th of June, 1882, without ever having paid any part of the debt to L. Tiff Risk, on which the latter had recovered judgment against complainant; that on the 27th of June, 1882, letters of administration on his estate were granted by the Probate Court of Shelby County to the defendant Thomas L. Risk, who was qualified and became the administrator and executed a bond as such, conditioned according to law, with the defendants John D. Milburn and

L. Tiff Risk as his sureties; that the administrator, on the 21st of August, 1882, filed an inventory of the assets of the estate, showing certain cash on hand and giving a list of personal property on which no value was set; that on the 27th of September, 1882, the said Thomas L. Risk, as such administrator, filed in the Probate Court his final settlement of the estate of E. F. Risk without giving the prescribed statutory notice to creditors and others interested in said estate; and that on the same day an order was entered confirming the settlement and discharging Thomas L. Risk as administrator, cancelling his bond and releasing his sureties from further liability. Upon this settlement it was shown by the administrator that the personalty had been disposed of, and that the whole amount with which he should be charged was $1028.49; and he also showed the debts paid, the expenses of administration, and the sum remaining for distribution, and credited himself with the sums paid the distributees of E. F. Risk, deceased, being as follows: To Mrs. Jennie Duncan, to L. Tiff Risk, to Alice H. Risk as guardian of Eben L. Risk, grandson of E. F. Risk, deceased, and himself, $202.56 each.

Complainant averred that Thomas L. Risk made the payments to the distributees without taking any refunding bond as required by the statute, and in his own wrong and without the authority of law, and that he and his sureties on his administration bond are now liable to complainant on account of the matters set out in the bill for the full amount of said payments and interest thereon until paid. Complainant further showed that on December 1, 1883, Thomas L. Risk was appointed by the Probate Court administrator *de bonis non* of the estate of E. F. Risk, deceased, and at that time gave a bond as such administrator, with defendants L. Tiff Risk and II. C. Warriner as sureties, and thereupon qualified and had since continued to be such administrator, but had filed no inventory of the assets of said estate since his appointment, and had taken no steps in the administration so far as the complainant knew or believed.

The bill then proceeded: "Upon the state of facts aforesaid the plaintiff submits that the discharge in bankruptcy of the

said E. F. Risk did not discharge him or his estates from lia-bility to the plaintiff on the contract of indemnity, a copy of which is marked Exhibit ' A,' and a part of this bill, but such liability remains upon his estate, and the said Thomas L. Risk, as administrator thereof, personally, as if no discharge in bankruptcy had been granted; and the plaintiff further submits that the said distributees to whom the said Thomas L. Risk distributed the sums aforesaid in the manner aforesaid, to wit, (naming them), are liable and are bound by law to refund and pay the said sums so distributed to them, respectively, in order that the same may be applied towards the payment of the demand herein set up by the plaintiff against the estate of the said E. F. Risk, deceased, and the said Thomas L. Risk, as administrator." The bill prayed process, and that on the final hearing complainant might have a decree against the defendants and each of them, or such of them as were liable, jointly or severally, for the sums they respectively owed him, and for general relief.

Exhibit " A " attached to the bill bore date February 1, 1875, and recited that in consideration of ten thousand dollars, the receipt of which was thereby acknowledged, and the further consideration thereinafter mentioned, Johnson had that day bargained, sold and conveyed to E. F. Risk, his undivided half or moiety of a certain parcel of land as described, (upon which the firm's foundry building was located,) together with all the tools and machinery of every sort and kind whatever, then on said lot or in said foundry, and then continued: " This instrument further witnesseth that the firms of Johnson, Risk & Co. and of Risk & Johnson are this day dissolved, the said Johnson selling all his interest in the machinery, tools, and stock of every kind on hand belonging to both firms, to the said E. F. Risk, and part of the consideration for said sale and the above conveyance is that the said Risk assumes payment of each and all the debts and liabilities of every kind whatsoever of each and both of said firms, and binds and obligates himself to pay the same and protect and keep said Johnson harmless from the payment of any part thereof;" and it is then provided that the bills receivable, etc., shall be

collected by E. F. Risk and divided as fast as practicable between himself and Johnson, less necessary costs and charges, one-half to each; that $150 shall be paid to Johnson in cash at the end of each and every month, and whenever the monthly collections amount to $1000 or more in excess of the monthly payment of $150 to Johnson and a like amount retained by Risk, then Risk was to execute his note to Johnson for one-half of said collections, payable eight months after date, with interest. It was further provided that Johnson should retain a lien upon the real estate and machinery conveyed, Risk acknowledging the same, "together with a lien, equal to and like a mortgage upon his other undivided half of said foundry property, both land and machinery, to secure to Johnson the faithful performance of the undertakings herein made by the said Risk, which are that he will pay over to Johnson at the end of each month $150; one-half of all other collections eight months after they are made, with interest thereon at eight per cent per annum; and pay all the debts outstanding owing by the said two firms or either of them." And: "In the event that Johnson should have to pay any of said debts or be sued thereon, or should not be paid his half of the collections made as stipulated above, then he may proceed forthwith to enforce the liens herein retained and granted by proper proceeding therefor."

To this bill Thomas L. Risk in his own right and as administrator *de bonis non* of E. F. Risk, deceased, John D. Milburn and H. C. Warriner demurred, assigning as grounds that E. F. Risk was released from the debt sued for by his discharge in bankruptcy, granted on the 20th of December, 1878, on his petition in bankruptcy filed on the 11th of July, 1878; and also that the supposed cause of action was barred by the statute of limitations of two years and six months from the grant of letters of administration, June 27, 1882; and also that the cause of action did not accrue within six years next before the bringing of the suit, and was therefore barred; and a special ground as to Warriner. L. Tiff Risk filed his separate demurrer assigning the same causes. The chancellor sustained the demurrers and dismissed the bill, and complain-

ant prayed an appeal to the Supreme Court of the State, which, on the 28th of April, 1887, affirmed the decree. Complainant then sued out this writ of error.

The following are sections of the Code of Tennessee of 1884, the numbers being given of that and the preceding edition:

"3087–2249. That all creditors may be duly apprised of the death of any person indebted to them, the executor or administrator of the deceased shall, within two months after qualification, advertise at the court-house of the county where the deceased usually dwelt at the time of his death, and other public places in the county, for all persons to bring to him their accounts and demands."

"3112–2274. Executors and administrators shall have six months from the date of their qualification to ascertain the situation of the deceased's estate, and to arrange and settle it without being liable to suit and costs; and all suits commenced within that period may be abated and dismissed at the plaintiff's cost, except suits brought by sureties of the deceased, which may be brought without delay."

"3117–2279. The creditors of deceased persons, if they reside within this State, shall within two years, and if without, shall within three years from the qualification of the executor or administrator, exhibit to them their accounts, debts, and claims, and make demand, and bring suit for the recovery thereof, or be forever barred in law and equity."

"3222–2377. Creditors whose debts are not due shall be under the same obligation to present their claims as those whose debts are due, and upon failure to do so shall be barred in like manner; but a creditor shall not be bound to present his claim before due, except where the estate is represented to be insolvent as herein provided."

"3454–2760. The time between the death of a person and the grant of letters testamentary or of administration on his estate, not exceeding six months, and the six months within which a personal representative is exempt from suit, is not to be taken as a part of the time limited for commencing actions which lie against the personal representative."

"3466–2769. All civil actions, other than those for causes

embraced in the foregoing article, shall be commenced after the cause of action has accrued, within the periods prescribed in this chapter, unless otherwise expressly provided."

"3472–2775. Actions for the use and occupation of land and for rent, actions against the sureties of guardians, executors, and administrators, sheriffs, clerks, and other public officers, for nonfeasance, misfeasance, and malfeasance in office; actions on contracts not otherwise expressly provided for, within six years after the cause of action accrued."

"3481–2784. Actions against the personal representatives of a deceased person shall be commenced by a resident of the State within two years, and by a non-resident within three years after the qualification of the personal representative, if the cause of action accrued in the lifetime of the deceased, or, otherwise, from the time the cause of action accrued."

*Mr. William M. Randolph*, for plaintiff in error, submitted on his brief.

*Mr. B. M. Estes*, for defendants in error, submitted on his brief.

MR. CHIEF JUSTICE FULLER, after stating the case as above reported, delivered the opinion of the court.

The defendants below demurred upon two general grounds, one of which involved the construction of the provisions of the bankrupt act of March 2, 1867, and the other, the bar of the statutes of limitation of the State of Tennessee. So far as we are advised, no opinion was given by the Supreme Court of that State, upon rendering the judgment of affirmance, and the record discloses no specific statement of the ground upon which the court proceeded. Inasmuch as one of the defences called for the construction and application of a State statute in a matter purely local, in respect to which great weight, if not conclusive effect, should be given to the decisions of the highest court of the State, (*Gormley* v. *Clark*, 134 U. S. 338, 348,) the plaintiff in error, if he wished to claim that this cause was

disposed of by the decision of a federal question, should have obtained the certificate of the Supreme Court to that effect, or the assertion in the judgment that such was the fact.

In *De Saussure* v. *Gaillard*, 127 U. S. 216, the general rule is stated that to give this court jurisdiction of a writ of error to a State court, "it must appear affirmatively, not only that a federal question was presented for decision to the highest court of the State having jurisdiction, but that its decision was necessary to the determination of the cause, and that it was actually decided, or that the judgment as rendered could not have been given without deciding it."

Where there is a federal question, but the case may have been disposed of on some other independent ground, and it does not appear on which of the two grounds the judgment was based, then if the independent ground was not a good and valid one, sufficient of itself to sustain the judgment, this court will take jurisdiction of the case, because, when put to inference as to what points the state court decided, we ought not to assume that it proceeded on grounds clearly untenable. *Klinger* v. *Missouri*, 13 Wall. 257. But where a defence is distinctly made, resting on local statutes, we should not, in order to reach a federal question, resort to critical conjecture as to the action of the court in the disposition of such defence.

Was the defence of the statute of limitations so palpably unfounded that we must presume that the state court overruled it?

The decisions of the Supreme Court of Tennessee seem to establish, as to the sections of the code of that State given above, that section 3117 relates to demands arising against deceased persons in their lifetime, and applies alike to solvent and insolvent estates, *Brown* v. *Porter*, 7 Humphreys, 373; *Miller* v. *Taylor*, 6 Heiskell, 465; that under section 3481, where the estate is solvent, the statute of limitations does not begin to run until the demand falls due or right of action accrues, *Trott* v. *West*, 9 Yerger, 433; *Hearn* v. *Roberts*, 9 Lea, 365; that the omission of the advertisement for claims prescribed by section 3087 does not prevent the running of the

statute, *Todd* v. *Wright*, 12 Heiskell, 442; that under section 3454, construed with section 3117, the resident creditor has two years and a half after qualification of the personal representative, in which to sue on demands not barred by the general statute; *Maynard* v. *May*, 2 Coldwell, 44; *Todd* v. *Wright*, 12 Heiskell, 442; and that when the general statute has commenced to run in the debtor's lifetime, death suspends its operation for not exceeding six months after that event, and prior to the grant of letters testamentary or of administration, and suit cannot be commenced against the administrator for the six months following such grant. *Bright* v. *Moore*, 87 Tennessee, 186; *Boyd* v. *Lee*, 12 Lea, 77.

The bill counted upon the liability of E. F. Risk under the agreement attached as an exhibit, and not otherwise. By that agreement Risk contracted to pay all the debts and liabilities of every kind of the firms, to assume the liabilities and to save Johnson harmless. This was broken by a failure to pay the parties to whom the firms were liable, and it was not necessary to a breach that Johnson should show that he had first paid those parties. It was not an agreement merely to indemnify Johnson from damage, but to assume the indebtedness and discharge him from liability. *Mills* v. *Dow's Administrator*, 133 U. S. 423, 432; *Wicker* v. *Hoppock*, 6 Wall. 94; *Locke* v. *Homer*, 131 Mass. 93. In the latter case, Mr. Justice Gray, then Chief Justice of Massachusetts, reviews the authorities, and cites among others, *Robinson* v. *Robinson*, 24 L. T. Rep. 112. There by an indenture of dissolution of a partnership between the plaintiff and defendant, the defendant to whom all the partnership property was transferred, covenanted to pay and satisfy within eighteen months all the debts of the partnership, and also to indemnify and save harmless the plaintiff against all costs, losses, charges, damages, claims, and demands which he might incur or become liable to in respect to the partnership debts. In an action on the defendant's covenant to pay the debts of the partnership, Lord Campbell and Justices Wightman and Erle held that the measure of damages was the whole amount of the debts which he had not paid, whether they had been paid by the plaintiff, or he had given

promissory notes for them or not. The ruling of the Supreme Court of Tennessee in *Gray* v. *Williams,* 9 Humphreys, 502, 505, is to the same effect. See also *Atkins* v. *Scarborough,* 9 Humphreys, 517.

This bill does not show when the debt to L. Tiff Risk became due, nor when suit for its recovery was commenced against Johnson, but it was of course prior to April 22, 1878, when judgment was recovered. The contract of E. F. Risk had therefore been broken prior to that time, and this action was commenced on the 28th of October, 1885, more than seven years and six months after the breach, and more than three years and four months after June 27, 1882, the date of the letters of administration to Thomas L. Risk.

Johnson was a resident of Tennessee, and should have exhibited his claim to the administrator and commenced his action within two and a half years after the letters were issued. Moreover, the cause of action on the agreement would have been barred as early as April 22, 1884, against E. F. Risk, if he had lived, and, so far as his death operated to give further time, that had also expired.

Inasmuch, therefore, as, if the Supreme Court of the State had sustained the defence of the statutes of limitation, we cannot perceive that such decision would have been erroneous, it does not appear that the judgment as rendered could not have been given without deciding the federal question, or that its decision was necessary to the determination of the cause and that it was actually decided.

The writ of error must therefore be

*Dismissed.*