# ADAMS v. RUSSELL, WARDEN.

ERROR TO THE SUPREME COURT OF THE STATE OF MICHIGAN.

No. 1048. Submitted May 12, 1913.—Decided June 10, 1913.

This court will not review the judgment of the state court when it rests not only on Federal, but also on non-Federal grounds, and the latter are sufficient to sustain it and were necessarily decided.

Whether state officers have power to grant a parole under a state indeterminate sentence act, and under what conditions, are for the state court to finally determine.

The state court having held that, under the applicable statutes, the parole granted to a prisoner was absolutely void and was therefore properly vacated, such ground is sufficient to sustain the judgment, and this court cannot review it on the asserted Federal question that the state officers had vacated the parole in such manner as to violate the prisoner's constitutional rights secured by the Fourteenth Amendment.

Whether a state statute allowing prisoners a reduction for "good time" is part of an indeterminate sentence act is for the state court to determine, and in this case it is a substantial local question on which to rest the judgment of the state court.

Writ of error to review 169 Michigan, 606, dismissed.

THE facts, which involve the jurisdiction of this court to review a judgment of the state court which rests upon non-Federal as well as Federal grounds, are stated in the opinion.

*Mr. Fred A. Baker* for plaintiff in error.

*Mr. Grant Fellows,* Attorney General of the State of Michigan, and *Mr. Thomas A. Lawler,* Assistant Attorney General, for defendant in error.

MR. JUSTICE MCKENNA delivered the opinion of the court.

Error to review the action of the Supreme Court of Michigan, denying plaintiff in error a writ of *habeas corpus.*

The facts, as alleged in the petition, are these:

Plaintiff in error was convicted in the Recorder's Court of the City of Detroit of the crime of seduction and sentenced to imprisonment for not less than two and one-half years and for not more than five years. The case was reviewed by the Supreme Court of the State on a bill of exceptions and a writ of error and the sentence and judgment of the court below affirmed. Pending the writ of error he was released from imprisonment, but after his sentence was affirmed he was recommitted to prison and ever since has remained there. He duly made application to the Advisory Board of Pardons for a parole under Act No. 184 of the Public Acts of 1905 (June 7, 1905, Pub. Acts, 1905, p. 268), as amended. On December 5, 1911, the board granted and delivered to the warden of the prison a certificate or warrant of parole by which he was paroled "for two months from and after January 29, 1912."

On December 11, 1911, the action of the board paroling plaintiff in error was vacated, for the reason, as the records show, that it was at that date "in possession of facts not known at the time of such action." The warden was notified of the action of the board.

This action of the board was without notice to plaintiff in error and gave him no opportunity to be heard or to disprove the charge or facts alleged against him.

Having served his minimum sentence and having been granted a parole he is not now imprisoned on any process, judgment, decree or execution specified in § 8 of the Habeas Corpus Act of the State.

On March 5, 1912, he presented a petition for a writ of *habeas corpus* to the Supreme Court of the State in which he set up the facts of his case as above stated and alleged the illegality of his imprisonment as follows: (1) The Advisory Board has no jurisdiction or authority to vacate the parole granted to him, the power and authority to retake and return any paroled convict to the prison being,

within the exclusive jurisdiction and discretion of the warden or superintendent of the prison. (2) If the Indeterminate Sentence Act is construed to confer such power upon the board without notice to the convict, then said act is in conflict with the provision of the constitution of the State which prohibits cruel and unusual punishment or the taking of life, liberty or property without due process of law, and against the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States. (3) If so construed, the convict would be twice punished for the same offense. (4) The Indeterminate Sentence Act and the rules and regulations promulgated thereunder contemplate that a convict's parole will not be annulled except when he violates the terms and conditions of his parole or the rules and regulations. (5) His term of imprisonment has expired.

The Supreme Court instead of granting a writ of *habeas corpus* as prayed, granted a writ of certiorari to inquire into the cause of detention, under the authority of § 9889 of the Michigan Compiled Laws of 1897. The court also granted a common law writ of certiorari to bring the record of the Advisory Board before it, and both writs were made returnable April 2, 1912.

Returns were made to the writs, which plaintiff in error traversed so far as they set forth facts which were alleged in a communication to the board, attached to the returns.

The case so made up was argued and submitted to the court on April 2, 1912.

The Attorney General made no attempt to sustain the power or jurisdiction of the Advisory Board to annul a parole without notice to the convict, but contended that as the Supreme Court in affirming the conviction of plaintiff in error had held that the time he was out on bail should not be included in determining the length of his

imprisonment, he was "subject to imprisonment under the sentence for the unexpired part thereof remaining at the time of his release" (on bail), his minimum sentence not expiring until January 29, 1912, and his parole was void because his application was made and acted upon before the expiration of his minimum sentence.

The court held that his parole was void on the ground taken by the Attorney General, and the petition was denied. 169 Michigan, 606.

Plaintiff in error and his counsel inadvertently overlooked the fact that he was entitled under the laws of Michigan to a deduction from his minimum sentence for the "good time" accorded to convicts in the prisons of the State. Under the laws of the State he had earned and was entitled during the first and second years of his sentence, to five days "good time" for each month, and, during the third year, to six days each month, making a total of one hundred and thirty-eight days, so that his minimum sentence of two years had expired before his application for parole.

The prison parole law of the State has been in existence since 1905, and down to the decision of the Supreme Court in his case, it was the constant practice of the Advisory Board to receive and act upon applications of convicts before and in anticipation of the expiration of their minimum sentences and to grant paroles from a designated date, at or after the expiration of the convict's minimum sentence. At the time of the decision there were a large number of paroles outstanding and these have been recognized as legal and valid, and, notwithstanding the decision, no paroled convict or prisoner other than plaintiff in error has been kept in or returned to prison on the ground that his parole was prematurely granted and void. Discrimination is alleged to result against him and a violation of the Fourteenth Amendment to the Constitution of the United States.

Twenty-eight cases are enumerated, and it is alleged that the board, since the decision, has continued the practice.

Plaintiff in error alleged the illegality of his imprisonment as follows: (1) His minimum sentence had expired at the time the board received and acted upon his application for parole, and the order of release was a valid warrant or instrument for his discharge. (2) The board had no power to vacate it, or, if it had such power, it was only upon notice. (3) The parole law, as enforced, discriminates against him and denies him the equal protection of the laws guaranteed by the Fourteenth Amendment to the Constitution of the United States. (6) The vacating of his parole was a violation of the due process clause of that Amendment. (7) He was not guilty of any violation of his parole. (8) The reasons given in his former petition were repeated and relied on.

It is not necessary to set forth the exhibits to the petition. They are sufficiently indicated in the petition. The board's action in vacating the parole was induced by a communication made to it by the prosecuting officer of the county, stating the circumstances of the crime for which Adams was convicted. They are not important, however, to the legal propositions involved, and even to a consideration of the latter a question of jurisdiction is interposed.

It will be observed that the questions in the second petition (that under consideration) are the same as those presented in the first. In both, local and Federal questions appear. We say Federal questions, for at least there are claims in words under the Constitution of the United States. They depend upon two propositions—(1) If the Indeterminate Sentence Act be construed as giving the Advisory Board power to annul the parole without notice, it violates the due process clause of the Constitution of the United States. (2) The parole as enforced denies plaintiff in error the equal protection of the law.

Granting for the time being that these propositions are not merely dependencies of the local questions, that is, are not dependent upon the statute, may we review them? We have seen that the Supreme Court decided that the parole was void, the Advisory Board having no power under the statute to grant it. The ground of the ruling was that plaintiff in error's minimum sentence had not expired. In his second petition he alleges that his term had expired on account of credit due him for "good time" accorded convicts in the prisons of the State, that his counsel had inadvertently overlooked the fact that he was entitled to such credit, which amounted to a total of one hundred and thirty-eight days, and that, therefore, his sentence had actually expired before his application for parole. The petition was denied without opinion and it is left indefinite upon what ground—whether the court entertained views adverse to plaintiff in error's on the Federal questions or whether it considered that its former decision determined his rights; whether, as a matter of procedure, a rehearing was his remedy, or whether the new claim of "good time" allowance was tenable under the statute. In such situation may we conjecture upon which ground the court decided and by conjecture acquire jurisdiction to review the judgment of the court?

In *Eustis* v. *Bolles,* 150 U. S. 361, it is decided that when there is a Federal and state question in the case and the latter is sufficient to sustain the judgment, this court will not review the judgment, and the logical course is to dismiss the writ of error. But we may be put to infer what points may have been raised and what was decided; in other words, whether the state court rested its decision upon a Federal ground or upon an independent ground. If the latter be contended, then it must appear that such ground was a good and valid one, sufficient to sustain the judgment. *Klinger* v. *Missouri,* 13 Wall. 257, 263. Other-

wise, as was said in *Neilson* v. *Lagow*, 12 How. 98, 110, "counsel might raise on the record some point of local law, however erroneous, and suggest that the court below may have rested its judgment thereon," and, therefore, if the independent ground be not good and valid it will not be presumed that the judgment was based upon it. See also *Maguire* v. *Tyler*, 8 Wall. 650. If, however, the state question have that quality, and there be uncertainty as to the ground of decision, this court will not assume jurisdiction. *Dibble* v. *Bellingham Bay Land Co.*, 163 U. S. 63, 69; *Allen* v. *Arguimbau*, 198 U. S. 149.

In *Commercial Bank* v. *Rochester*, 15 Wall. 639, a suit was brought to recover a tax charged to have been illegally levied and collected upon the capital stock of the bank alleged to have been invested in United States bonds. The case was dismissed for want of jurisdiction. We said, by Mr. Justice Miller: "It has been so often held by this court, that the question on which the plaintiff in error relies to give it jurisdiction must appear to have been decided by the state court, that it has become one of the settled principles on that subject." And further, "It is said in this case that the court [state court] *must* have decided in favor of the validity of the tax, which it is conceded would have given this court jurisdiction. But this does not appear either affirmatively or by necessary intendment. For the case may have been decided on the form of the remedy which the practice in the state courts required the plaintiff to adopt, or on the technical insufficiency of the pleading. In this uncertainty of the record as an indication we may, without going further, dismiss the case on that ground." It was objected that the state decision precluded the view that the case was decided on the local rules of pleading, to which it was replied that the state court was the proper tribunal to decide the question, and that we were not authorized to say that the court did not decide it correctly or that it made any deci-

sion adverse to the exemption of the securities of the
United States from state taxation.

In *Railroad Company* v. *Rock*, 4 Wall. 177, and *Insurance
Company* v. *Treasurer*, 11 Wall. 204, there was a possibil-
ity of two grounds of decision, Federal and local, and this
court declined to review the judgments. See also *Todd* v.
*Daniel*, 16 Peters, 521, 525.

In *Bachtel* v. *Wilson*, 204 U. S. 36, 41, 42, we said, by
Mr. Justice Brewer, that before we can pronounce a judg-
ment of a state court to be "in conflict with the Federal
Constitution, it must be made to appear that its decision
was one necessarily in conflict therewith and not that pos-
sibly, or even probably, it was." The case involved the
consideration of a state statute which presented two ques-
tions, one of which, at least, presented no matter of a
Federal nature, and in respect to each of which something
might be said one way and the other, and until it was
shown what the Supreme Court did in fact decide it was
impossible to hold that the section as construed by it was
in conflict with the Federal Constitution. Under these
circumstances it was held that this court had no jurisdic-
tion, and the writ of error was dismissed. *Johnson* v.
*Risk*, 137 U. S. 300, was cited. No opinion was given by
the state court in *Bachtel* v. *Wilson*, nor in the cited case.
In neither case, therefore, did the record disclose the
specific ground upon which the court proceeded. In such
case, we said in *Johnson* v. *Risk*, by Mr. Chief Justice
Fuller, that when the application of a state statute in a
matter purely local was involved, if a plaintiff in error
wished to claim that the cause was disposed of by the de-
cision of a Federal question, he should obtain the certifi-
cate of the Supreme Court to that effect, or the assertion
in the judgment that such was the fact. *DeSaussure* v.
*Gaillard*, 127 U. S. 216, was adduced as deciding that to
give this court jurisdiction of a writ of error to a state
court it must appear affirmatively not only that a Federal

question was presented for decision but that its decision was necessary to the determination of the cause, and that it was actually decided, or that the judgment as rendered could not have been rendered without deciding it.

The rule is a salutary one in view of the different juris-dictions of the state courts and of this court. It leaves in both the full plenitude of their powers. It permits no evasion by the state court of the responsibility of deter-mining the Federal question if necessary to be determined; it permits no assumption by this court of jurisdiction to review the decision of local questions. The sufficiency of the local question to sustain the judgment rendered, and the necessity for the determination of the Federal question necessarily we have to consider, but, as was said in *John-son* v. *Risk*, "Where a defense is distinctly made, resting on local statutes, we should not, in order to reach a Federal question, resort to critical conjecture as to the action of the court in the disposition of such defense." And, of course, the principle is applicable whether the question is presented as a ground of defense or a ground of action.

It certainly cannot be said that in the case at bar, the Supreme Court had not grounds of decision based on the local law, whether considered substantively or adminis-tratively. The "good time" law and the indeterminate sentence law were enacted at different times. Whether the former is part of the latter is a state question, and whether the Supreme Court has decided in the present case contrary to its ruling in a prior case may or may not be true. And, again, it is a state question, whether the "good time" law applies to the minimum sentence im-posed, which, it is contended by defendant in error, is fixed and certain, not subject to diminution, § 5 of the Indeterminate Sentence Act providing that "prisoners under the provisions of this act shall be eligible to parole after the expiration of their minimum term of imprison-ment, and prisoners who have been twice previously con-

victed of a felony shall not be eligible to a parole." In other words, it is contended that the reduction for "good time" should be only from the maximum term, that being the sentence referred to in the "good time" law, which provides: "Every convict who shall have no infraction of the rules of the prison or the laws of the State recorded against him, shall be entitled to a reduction from his sentence," etc. It has been determined in other jurisdictions that the maximum term constitutes the sentence. See *Ex parte Spencer, Scholl and Moyer,* 228 U. S. 652; *Commonwealth* v. *Brown,* 167 Massachusetts, 144; *Oliver* v. *Oliver,* 169 Massachusetts, 592. In support of the contention that the Indeterminate Sentence Law and its provisions for parole did not in any way repeal or modify the Good Time Law plaintiff in error cites the last clause of § 6, which reads as follows:

"The convict so paroled, while at large, by virtue of such parole, shall be deemed to be still serving the sentence imposed upon him, and shall be entitled to good time the same as if confined in prison."

On the assumption made, the query yet remains, To what sentence is the good time to apply? We have seen, the Supreme Court has decided that a convict cannot be paroled until his minimum sentence has expired, and that good time does not apply to the minimum sentence, receives support from the fact that neither the counsel for the parties, nor the court upon the first petition, thought of the construction plaintiff in error now urges for the "good time" law and its operation to reduce his minimum sentence. We are not required to resolve the dispute. We have stated the respective contentions of the parties to show that there were substantial local questions in the case upon which the Supreme Court may have decided it.

It follows, therefore, upon the authority of the cases which we have cited, that the writ of error must be dismissed.

*Dismissed.*