FILED
United States Court of Appeals
Tenth Circuit

January 17, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

LARRY HAUSLER,

       Plaintiff-Appellant,

v.

H. MAX FELTON,

       Defendant-Appellee.

No. 10-5131
(D.Ct. No. 4:09-CV-00483-TCK-TLW)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MURPHY**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and
**GORSUCH**, Circuit Judge.

_____

Appellant Larry H. Hausler, a resident of Texas, appeals the district court's

dismissal of his breach of contract claim in a diversity action against Appellee H.

Max Felton, a resident of Oklahoma, which the district court dismissed based on

the doctrine of claim preclusion. We exercise jurisdiction under 28 U.S.C. § 1291

and affirm the district court's dismissal of Mr. Hausler's complaint.

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, *res judicata* and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

I.  Factual and Procedural Background

All events giving rise to Mr. Hausler's claim arose in Oklahoma, and the following facts, which are primarily contained in the district court's opinion and order, are undisputed by the parties.  *See Hausler v. Felton*, 739 F. Supp. 2d 1327, 1328 (N.D. Okla. 2010).  In 1986, Mr. Hausler and Michael Hudson purchased land in Oklahoma where a Burger King restaurant was later constructed.  *Id.* Shortly thereafter, they leased the restaurant to a company known as HMF Enterprises in which Mr. Hausler held stock.  *Id.*  Later in the year, Mr. Hausler and Mr. Hudson sold the real property to Jerome Feldman and also assigned HMF Enterprises' restaurant lease to him.  *Id.*  In assigning the restaurant lease, Mr. Hausler and Mr. Hudson guaranteed HMF's lease payments to Mr. Feldman.  *Id.* Thereafter, Mr. Feldman assigned the restaurant lease to Networks XIX.  *Id.*

In 1998, Mr. Hausler sold his stock in HMF Enterprises and his rights under a Burger King Franchise Agreement to Mr. Felton.  *Id.*  As part of the sale, Mr. Hausler and Mr. Felton entered into a contract containing the following provision, hereafter referred to as the "indemnity" provision, on which Mr. Hausler's contract claim and this appeal are based:

> Assumption by Buyer of all accounts payable that directly relate to
> Burger King # 5110 and Burger King #527, Buyer specifically
> agreeing to hold Seller harmless therefrom for any loss or damage,
> including costs or attorney's fees, Seller might incur as a result
> thereof.  Further, Buyer agrees to satisfy the foregoing accounts

-2-

payable in the timely manner as same become due and payable.

*Id.*

Six years later, in 2004, HMF Enterprises defaulted on its restaurant lease and Networks XIX made a demand on Mr. Hausler for payment pursuant to the guaranty which accompanied the lease. *Id.* In turn, Mr. Hausler, who had sold his stock in HMF Enterprises and his franchise rights to Mr. Felton, made a demand on Mr. Felton for payment; however, Mr. Felton failed to pay, causing Mr. Hausler to pay the money due Networks XIX.[1] *Id.* In May 2005, Mr. Hausler filed a breach of contract lawsuit against Mr. Felton, pursuant to the indemnity provision of their contract, seeking indemnification for the money he paid to Networks XIX. *Id.* In March 2008, a jury awarded Mr. Hausler an indemnity award in the amount of $181,523.90.[2] *Id.*

Meanwhile, in 2005, Networks XIX made another demand on Mr. Hausler to recover money under the terms of its lease for additional repairs and

---

[1] The demand for money included rent and other costs, including repairs.

[2] In the initial trial, the jury returned a verdict for Mr. Hausler in the same amount of $181,523.90, after which the district court granted Mr. Felton's motion for a new trial on grounds the verdict was against the weight of the evidence. *See Hausler*, 739 F. Supp. 2d at 1328. However, in the second trial, after the jury awarded the same amount to Mr. Hausler, the district court denied Mr. Felton's renewed request for a new trial. *Id.*

maintenance to the Burger King property. *Id.* at 1328, 1332. However, Mr. Hausler did not include a claim or otherwise amend his pleadings in the lawsuit against Mr. Felton to demand indemnity for such additional repairs and maintenance, *id.* at 1332, even though in a hearing in the earlier lawsuit, Mr. Hausler's attorney stated an intent to amend the complaint to include the instant demand. Two years later, in 2007, during the litigation of the aforementioned contract dispute, Networks XIX filed suit against Mr. Hausler to recover the cost of the additional repairs and maintenance, which Mr. Hausler eventually paid on December 22, 2008. *Id.* at 1328.

Thereafter, in 2009, Mr. Hausler filed the instant breach of contract lawsuit against Mr. Felton, separate and apart from his initial lawsuit, alleging Mr. Felton breached their contract under the indemnity provision by refusing to make payment to Networks XIX for the second set of repairs and maintenance, causing Mr. Hausler to pay additional funds to Networks XIX for which he sought indemnification. *Id.* As in the first lawsuit against Mr. Felton, Mr. Hausler made an indemnification claim against Mr. Felton for funds he paid to Networks XIX. *Id.* In response, Mr. Felton moved to dismiss the instant action as barred by the doctrine of claim preclusion. *Id.* at 1328-29. Mr. Hausler replied, arguing the claim at issue could not have been litigated in the earlier lawsuit because it did not accrue until he paid Networks XIX. *Id.* at 1331.

-4-

In September 2010, the district court granted Mr. Felton's motion to dismiss based on the doctrine of claim preclusion. *Id.* at 1331-33. Applying Oklahoma law, it held the indemnity provision at issue provided "indemnity from liability" which accrues when the event for which indemnity is due occurs, instead of "indemnity from loss" which does not arise until the loss is paid. *Id.* at 1331-32 (relying on *Travelers Ins. Co. v. L.V. French Truck Serv., Inc.*, 770 P.2d 551, 555-56 (Okla. 1988)). Specifically, under the indemnity provision, it found Mr. Felton agreed to "assume all accounts payable, satisfy such accounts as they became due, and further agreed to hold [Mr. Hausler] harmless from any loss or damage resulting therefrom" and that such language evidenced "indemnity from liability" because it bound him to "'stand in the place of [Mr. Hausler] in the performance of some act' – namely, the payment of certain 'accounts payable.'" *Id.* at 1332-33. In so holding, it noted nothing in the contract language suggested Mr. Hausler's right to indemnity arose only when he suffered a loss in conjunction with Mr. Felton's default on an account payable, but that Mr. Felton's assumption of all accounts payable and agreement to pay such accounts as they became due suggested the right to indemnity was triggered on default of any such required payment. *Id.* at 1332. As a result, it concluded Mr. Hausler's action accrued when the debt in question became due to Networks XIX, and not on Mr. Hausler's payment to Networks XIX. *Id.* Because Networks XIX made a demand on Mr. Hausler as early as 2005 and such a claim could have been

included in the earlier lawsuit, the district court determined the instant claim was precluded under Oklahoma law on the basis of claim preclusion. *Id.* at 1332-33. Accordingly, it granted Mr. Felton's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted. *Id.*

## II. Discussion

Mr. Hausler now appeals the district court's grant of Mr. Felton's motion to dismiss, renewing his argument the indemnity provision provided "indemnity from loss," which accrues at the time of payment, and not "indemnity from liability," which accrues when payment comes due. He contends the instant claim did not accrue until he paid Networks XIX in December 2008 for such loss – months after the April 2008 judgment was entered in his earlier lawsuit against Mr. Felton. In support of his argument, Mr. Hausler relies solely on the portion of the indemnity provision which states: "Buyer specifically agreeing to hold Seller harmless therefrom for any loss or damage, including costs or attorney fees, Seller might incur as a result thereof." He suggests specific mention of "loss," "damage," and "costs" evidences Mr. Felton's agreement to indemnify him from "any loss or damage" he might incur as a result of Mr. Felton's assumption of the accounts payable, making it an "indemnity against loss." In contrast, he points out the indemnity provision does not expressly use the word "liability,"

and he suggests the district court misconstrued the provision by relying on cases which did not apply Oklahoma law or use the same contract language at issue here. Based on his argument his claim did not accrue until he paid Networks XIX in December 2008, Mr. Hausler contends the doctrine of claim preclusion cannot apply to his claim.

In addressing Mr. Hausler's indemnity and claim preclusion arguments, we begin with a discussion of the standard of review, applicable federal and state law, and the legal principles we apply in interpreting contracts and applying claim preclusion. We review de novo a district court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted, *see Kansas Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1214 (10th Cir. 2011), including a district court's conclusions of law on the applicability of claim preclusion*, see Valley View Angus Ranch, Inc. v. Duke Energy Field Servs., Inc.*, 497 F.3d 1096, 1100 (10th Cir. 2007). "[T]o withstand a motion to dismiss, a complaint must have enough allegations of fact, taken as true, 'to state a claim for relief that is plausible on its face.'" *Kansas Penn*, 656 F.3d at 1214 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). As a result, we "assume the factual allegations are true and ask whether it is plausible that the plaintiff is entitled to relief." *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009).

In a diversity case, as presented here, we apply federal law to procedural questions but "the substantive law of the forum state governs the analysis of the underlying claims." *Haberman v. The Hartford Ins. Group*, 443 F.3d 1257, 1264 (10th Cir. 2006). In this case, the parties do not contest the district court's application of Oklahoma law in interpreting the contract or disposing of the preclusion issue presented. We proceed under the same assumption and apply Oklahoma law. *See Grynberg v Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008). "When the federal courts are called upon to interpret state law, [we] must look to the rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule" by considering the rulings of that state's intermediate courts, *Johnson v. Riddle*, 305 F.3d 1107, 1118-19 (10th Cir. 2002), or in light of decisions from other jurisdictions, statutes, or treatises, *see United States v. DeGasso*, 369 F.3d 1139, 1145 (10th Cir. 2004). Indeed, in absence of state precedent, the Oklahoma Supreme Court relies on persuasive reasoning of other state courts addressing like issues and statutes. *See Phillips v. Estate of Greenfield*, 859 P.2d 1101, 1104 (Okla. 1993); *Edmondson v. Siegfried Ins. Agency,* 577 P.2d 72, 73-74 (Okla. 1978). In addition, we and the Oklahoma court are also bound by Supreme Court precedent. *See Eugene S. v. Horizon Blue Cross Blue Shield*, 663 F.3d 1124, 1135 (10th Cir. 2011); *LaFevers v. Gibson*, 182 F.3d 705, 716 (10th Cir. 1999). Finally, where a matter is of first impression in Oklahoma, "we are inclined to give great deference to the opinion of the

resident federal district judge concerning that state's law" as "[h]is view carries extraordinary persuasive force on appeal where there are no state decisions on point or none which provide a clear precedent." *DeBoer Const., Inc. v. Reliance Ins. Co.*, 540 F.2d 486, 492 (10th Cir. 1976) (quotation marks omitted).

With regard to the contract provision in question, "[w]e review de novo a district court's application of state law ...." *Deer Crest Assoc. I, LLC v. Avalon Deer Valley, LLC*, 566 F.3d 1246, 1248 (10th Cir. 2009). "In Oklahoma, a comprehensive statutory scheme governs contractual agreements." *Gamble, Simmons & Co. v. Kerr-McGee Corp.*, 175 F.3d 762, 767 (10th Cir. 1999) (relying on Okla. Stat. tit. 15, §§ 151-78). Oklahoma "statutes provide that whenever possible we must give effect to mutual intent of the parties as expressed in the language of the contract, so long as it is unambiguous on its face and there exists no 'fraud, accident, or pure absurdity' affecting the agreement." *Id.* (quoting, in part, Okla. Stat. tit. 15, § 154). A determination of whether a contract is unambiguous is a question of law reviewed de novo. *See Combs v. Shelter Mut. Ins. Co.*, 551 F.3d 991, 996-97 (10th Cir. 2008); *Bank of Wichitas v. Ledford*, 151 P.3d 103, 111 (Okla. 2006).

"In arriving at the parties' intent, the terms of the instrument are to be given their plain and ordinary meaning" and "[w]here the language of a contract

is clear and unambiguous on its face, that which is expressed within its four corners must be given effect." *Bank of Wichitas*, 151 P.3d at 111. Thus, "'[a] contract must be considered as a whole so as to give effect to all its provisions without narrowly concentrating upon some clause or language taken out of context.'" *City of Warr Acres v. Int'l Ass'n of Firefighters, Local No. 2374*, 64 P.3d 1118, 1121 (Okla. Civ. App. 2002) (quoting *Mercury Inv. Co. v. F.W. Woolworth Co.*, 706 P.2d 523, 529 (Okla. 1985)). In other words, we may not "create an ambiguity by using a forced or strained construction, by taking a provision out of context, or by narrowly focusing on the provision." *Combs*, 551 F.3d at 997 (quotation marks omitted).

Having discussed the legal principles associated with contract interpretation, we turn to the legal principles regarding claim preclusion. In this case, the parties are only appealing the issue of when Mr. Hausler's indemnity claim accrued for the purpose of determining if he could have raised it in his prior litigation against Mr. Felton. With respect to this issue, Mr. Hausler acknowledges Oklahoma law "bars a party from litigating issues that were or could have been litigated in an earlier action between the same parties."[3]

---

[3] In Oklahoma, to establish claim preclusion, the party seeking it must prove: (1) the party against whom it is asserted was either a party to or a privy of a party to the prior action; (2) the issue subject to preclusion has actually been adjudicated in the prior case; (3) the adjudicated issue was necessary and essential
(continued...)

*Cockings v. Austin*, 898 P.2d 136, 140 (Okla. 1995). In determining if an indemnity action could have been litigated earlier, Oklahoma statutory law expressly provides directions on when an indemnity action accrues, stating:

> [T]he following rules are to be applied, unless a contrary intention appears:
>
> 1. Upon an *indemnity against liability*, expressly, or in other equivalent terms, *the person indemnified is entitled to recover upon becoming liable.*
>
> 2. Upon an *indemnity against claims or demands, or damages or costs*, expressly, or in other equivalent terms, *the person indemnified is not entitled to recover without payment thereof.*

Okla. Stat. tit. 15, § 427(1) and (2) (emphasis added); *see also Maryland Cas. Co. v. Peppard*, 157 P. 106, 108 (Okla. 1915) (arriving at same conclusion without express reliance on statutory law).

In attempting to determine what type of indemnity exists here, we look again at the contractual indemnity provision between Mr. Hausler and Mr. Felton, which states:

---

[3](...continued) to the outcome of that prior case; and (4) the party against whom it is [to be] interposed had a full and fair opportunity to litigate the claim or critical issue. *See Durham v. McDonald's Rests. of Okla., Inc.*, 256 P.3d 64, 66-67 (Okla. 2011). In this case, we need not resolve each of these criteria, as the only issue the parties raise regarding claim preclusion is whether the indemnity issue raised in the instant lawsuit "accrued" prior to judgment in the previous lawsuit for the purpose of determining whether Mr. Hausler could have raised it in that previous lawsuit.

> *Assumption* by Buyer of *all* accounts payable that directly relate to Burger King # 5110 and Burger King #527, Buyer specifically agreeing to *hold Seller harmless therefrom* for any loss or damage, including costs or attorney's fees Seller might incur as a result thereof. Further, Buyer agrees to satisfy the foregoing accounts payable *in the timely manner as same become due and payable*.

*Hausler*, 739 F. Supp. 2d at 1328 (emphasis added). When read in its entirety and applying the rules of statutory and contract construction, including giving the terms their plain and ordinary meaning, it is evident this provision is both one of assumption and indemnification, where: (1) Mr. Felton assumed liability for *"all accounts payable"*; (2) his liability for those debts arose when they *"[became] due and payable"* and he failed to pay them in a timely manner; and (3) he agreed to hold Mr. Hausler *"harmless therefrom"* in the event he failed to meet his obligation in paying those accounts payable. Because Mr. Felton's liability expressly arose once the debt became "due and payable" and he failed to pay in a "timely manner," it is unambiguously an "indemnity against liability," under Okla. Stat. tit. 15, § 427, rather than an "indemnity against loss," which requires payment of the debt before an indemnification action may commence. As the district court explained, nothing in the contract language suggests Mr. Hausler's right to indemnity arose only when Mr. Hausler suffered a loss in conjunction with Mr. Felton's default on an account payable, but, instead, it was triggered on Mr. Felton's default of any such required payment. *Hausler*, 739 F. Supp. 2d at 1332. As a result, we agree with the district court that the indemnity provision is

-12-

one of "indemnity against liability" and that Mr. Hausler's action accrued when the debt in question became due to Networks XIX. *Id.*

While Mr. Hausler aptly points out the indemnity provision does not expressly use the word "liability," its omission is not determinative given the Oklahoma statute at issue does not require express use of the word "liability" in order for a contract to provide "indemnity against liability." *See* Okla. Stat. tit. 15, § 427(1). Similarly, Mr. Hausler's attempt to narrowly focus only on the terms "loss and damage" and "costs" and the clause containing those terms is unavailing as we must consider and give effect to the whole provision rather than isolating, or taking out of context, one portion of it. *See Combs*, 551 F.3d at 997; *City of Warr Acres,* 64 P.3d at 1121. To do so would ignore the mutual intent of the parties as expressed in the language of the contract. *See Gamble*, 175 F.3d at 767. Instead, a fair reading of the provision shows the "loss and damage" clause was the indemnity portion of Mr. Felton's assumption of debt, and that clause pertained specifically to "*all* accounts payable," holding Mr. Hausler "harmless therefrom." The indemnity provision's further reference to "any loss or damage, including costs or attorney's fees Seller might incur as a result thereof," is clearly an agreement by Mr. Felton to indemnify Mr. Hausler for any loss or damage, including costs or attorney's fees, he incurred in the event Mr. Felton failed to pay such accounts payable.

While we agree with the district court that the plain and ordinary language of the indemnity provision establishes it is one of "indemnity against liability," we also note no Oklahoma case law assists in explaining why this type of indemnity applies in the instant case, nor have the parties provided any such authority. For that reason, the district court turned to other persuasive state cases for the purpose of illustrating why the language in question established "indemnity from liability" rather than "indemnity from loss." *See Hausler*, 739 F. Supp. 2d at 1332. As the district court pointed out, in *Kaklamanos v. Allstate Ins. Co.*, 796 So.2d 555 (Fla. Dist. Ct. App. 2001), the Florida court explained a contract for "indemnity against liability" is an undertaking of the indemnitor to stand in the place of the indemnitee in the performance of some act, as in the payment of a debt due a third person, causing the right of action to spring into existence with the accrual of liability and failure to discharge it. *Id.* at 561.

Similarly, in *Jackson v. Quantrex Integrated Tech. Group*, 2002 WL 220340 (Va. Cir. Ct. Feb. 12, 2002) (unpublished op.), the Virginia court found a stock purchase contract, in which the defendants agreed to assume a lease and pay all expenses and losses, constituted a contract for "indemnity from liability" because such obligations constituted commitments to pay such debt, and, as a result, the plaintiffs could bring an action on the defendants' default in paying such debt. *Id.* at **1-4. While Mr. Hausler correctly points out that the contract

language in these cases may not be identical to the provision at issue here, the underlying contractual obligation to assume all debt, and to indemnify on default in paying such debt, is similar to the instant case. While these cases are not precedential, they are persuasive in distinguishing what type of contractual obligation evidences "indemnity against liability," especially absent Oklahoma case law on the matter. Thus, contrary to Mr. Hausler's contentions, we find no error in the district court's reliance on such cases to illustrate why the instant unambiguous contractual obligation constituted "indemnity against liability."

The principle that one indemnifies against liability, rather than against loss, when he or she assumes another's business and business debt has long been recognized by the Supreme Court, as reflected in the precedential decisions in *Johnson v. Risk*, 137 U.S. 300 (1890), and *Mills v. Allen*, 133 U.S. 423 (1890). In *Risk*, Mr. Johnson sold and conveyed to Mr. Risk his half interest in both a foundry and mercantile business in which Mr. Risk assumed the payment of all debts and liabilities of every kind associated with those businesses and held Mr. Johnson harmless "from the payment of any part thereof." 137 U.S. at 300-01. By such purchase and agreement to assume and pay all indebtedness of the business, the Court found an "indemnity against liability" arose, stating Mr. Johnson needed only show Mr. Risk failed to pay those debts in order to establish his breach of the contract. *Id.* at 308.

Similarly, in *Mills*, two individuals purchased and assumed Mr. Mills's railroad construction contract, agreeing to pay certain subcontracts and hold Mr. Mills harmless from any and all liability from payment on those subcontracts. 133 U.S. at 424-25. When the purchasers failed to pay two of the subcontractors, the Court explained, the two purchasers took the place of Mr. Mills, and it was "not necessary to a breach that [Mr. Mills] should show that he had first paid those parties" in order to bring an action against those two individuals. *Id.* at 432.

Like these cases, Mr. Felton purchased Mr. Hausler's HMF Enterprises stock and his rights under a Burger King Franchise Agreement with the clear intention of carrying those businesses forward. In so doing, he stepped into the position of Mr. Hausler, including assumption of all his accounts payable, and promised to indemnify Mr. Hausler from liability related to those accounts when payment came "due and payable." Thus, these cases illustrate, as does the unambiguous language of the indemnity provision at issue, that the parties in this case bargained for "indemnity against liability" relating to all debt.

Applying this holding to the other facts in this case, it is undisputed Mr. Hausler became aware in 2005 of the additional monies owed Networks XIX, and certainly by 2007, when the prior action against Mr. Felton was initiated, he knew

Mr. Felton had not paid the aforementioned debt in a "timely manner." This is evidenced by the fact Mr. Hausler's attorney mentioned the instant demand of Networks XIX during a hearing in the first lawsuit against Mr. Felton as well as an intent at that time to amend the initial complaint against Mr. Felton to include it. As a result, it is clear Mr. Hausler's right to indemnification accrued prior to, or at the very least during, litigation in the prior action, and not when he eventually paid the debt in 2008 – months after completion of the prior lawsuit. For the purposes of claim preclusion, on which the parties agree this appeal is brought, the district court correctly concluded Mr. Hausler's instant claim against Mr. Felton could have been included in the earlier lawsuit and was therefore precluded under Oklahoma law. *See Hausler*, 739 F. Supp. 2d at 1332-33. Thus, even if we take as true Mr. Hausler's allegations Mr. Felton failed to pay the debt to Networks XIX for which indemnification applied, he has failed to "to state a claim for relief that is plausible on its face" based on the doctrine of claim preclusion successfully raised by Mr. Felton. *Kansas Penn*, 656 F.3d at 1214.

## III. Conclusion

For the foregoing reasons, we **AFFIRM** the district court's grant of Mr. Felton's motion to dismiss Mr. Hausler's complaint against him pursuant to

Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which

relief can be granted.

                                        **Entered by the Court:**

                                        **WADE BRORBY**
                                        United States Circuit Judge